Mark Owen McGUIRE,
Plaintiff–Appellant,

v.

Wayne ESTELLE, Warden,
Defendant–Appellee.

No. 87–2522.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1988.

Decided May 8, 1989.

Ann Hardgrove Voris, San Francisco, Cal., for plaintiff-appellant.

Herbert F. Wilkinson, Supervising Deputy Atty. Gen., San Francisco, Cal., for defendant-appellee.

Before SCHROEDER and WIGGINS, Circuit Judges, and STEPHENS *, District Judge.

* Hon. Albert Lee Stephens, Jr., United States District Judge for the Central District of California, sitting by designation.

WIGGINS, Circuit Judge:

Mark McGuire ("McGuire") appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(a). McGuire was convicted of second degree murder and is now serving a fifteen year to life sentence in a California state prison. McGuire contends that the admission of evidence of prior acts against him at his trial was error and denied him due process of law under the Fourteenth Amendment. We find that his contention has merit and REVERSE.

## FACTS AND PROCEEDINGS BELOW

At about 9:00 p.m., on July 7, 1981, McGuire and his wife brought their six-month-old baby girl to the emergency room of a hospital in Hayward, California. The baby was bluish in color and was not breathing. The hospital staff were unable to save the baby and she was pronounced dead at about 9:45 p.m.

At trial, one of the baby's treating physicians testified that the child was essentially lifeless and without vital signs when she was brought into the hospital. The doctor also testified that the baby had a large and relatively recent bruise on the upper left chest area with multiple bruise marks around it, black and blue marks on her ears, and scar tissue indicating tearing around the anus. A doctor who performed an autopsy on the body testified that there were at least seventeen contusions on the baby's chest and twenty-nine more on her abdomen. Examination of the internal organs revealed that the liver was split in half, her pancreas was lacerated and split apart, her lower right lung and large vein from the heart were damaged, and part of her large intestine was lacerated. Over McGuire's objection, the doctor also testified to rectal tearing at least six weeks old and to evidence of several partially healed rib fractures approximately seven weeks old.

McGuire's wife was granted transactional immunity by the prosecution. At trial, testifying for the prosecution, she stated for the first time that she, and not her husband, had beaten the baby.

On March 19, 1982, the jury returned a verdict of second degree murder against McGuire. On January 15, 1985, the California Court of Appeal affirmed his conviction. McGuire petitioned for a hearing before the California Supreme Court. On March 21, 1985, the California Supreme Court issued a "postcard denial" of the petition. It did so without any citation or comment.

On August 30, 1985, McGuire filed a petition for writ of habeas corpus in federal district court under 28 U.S.C. § 2254(a). Order to show cause issued on February 26, 1986. In its original response, the state of California did not answer on the merits but argued that McGuire had failed to exhaust his state remedies. The district court, relying on *Maxwell v. Sumner*, 673 F.2d 1031, 1034 n. 1 (9th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982), ruled against the state on the exhaustion issue and ordered it to answer on the merits. After the state did so, the district court denied McGuire's petition on July 15, 1987. It held that the admission of the evidence of the prior injuries to the child, and a jury instruction relating to that evidence, was proper under California evidence rules. The court also found that the evidence was relevant to contradict a pretrial statement made by McGuire, and offered at trial by the prosecution, that the baby's injuries were caused by her falling off a couch. The court also rejected McGuire's fifth amendment prosecutorial misconduct and denial of discovery claims. McGuire timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## I. *Exhaustion.*

28 U.S.C. § 2254(b) states: "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State...." On direct appeal to the California appellate court, McGuire raised four issues: (1) admission of evi-

dence of prior injuries to the baby, (2) a fifth amendment claim that the original trial court erroneously admitted evidence of a statement made to the police that "some Mexicans" might have come into his home and presumably injured the baby, (3) a second fifth amendment claim relating to statements he made to the police without *Miranda* warnings the day before he was arrested, and (4) a prosecutorial misconduct claim. In his petition to the California Supreme Court, McGuire raised only the issues of the evidence of prior injuries and the "Mexican intruder" statement. The California Supreme Court denied his petition without a hearing, comment, or citation. In his petition for habeas corpus, however, McGuire raised all four claims that he had previously raised before the California appellate court.

 A petition containing both exhausted and unexhausted claims must be dismissed by the federal courts. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982). Although McGuire presented only two of his four issues to the California Supreme Court, he has properly exhausted his state remedies. In *Maxwell*, we stated that:

> [I]f a claim has been briefed and argued before the [California] court of appeal, failure to assert it in the petition to the California Supreme Court does not normally waive the claim ... [W]hen the California Supreme Court grants a hearing, its order effectively vacates the order of the court of appeal; the California Supreme Court then decides each issue in the case as if it were on original appeal from the trial court, "regardless of the grounds relied on in the petition."

*Maxwell*, 673 F.2d at 1034 n. 1 (citations omitted).[1] Thus we may reach the merits of McGuire's claims.

## II. *Past Injuries*

 This court reviews the district court's denial of a petition for a writ of habeas corpus de novo. *Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985). A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held in violation of the Constitution or laws of the United States. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); 28 U.S.C. § 2254(a). McGuire contends that admission of evidence of the baby's prior injuries, coupled with a jury instruction that allowed the jury to infer that if he committed the prior offenses he committed the charged crime, deprived him of due process. An erroneous evidentiary ruling will not cause a writ to issue unless a specific constitutional guarantee has been violated or the error is of such magnitude that the result is a denial of fundamental fairness. *United States v. DeRobertis*, 738 F.2d 168, 170 (7th Cir.), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984). Before a federal court may overturn a state court conviction based on an incorrect or erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The erroneous jury instruction must have rendered the trial so fundamentally unfair as to have denied McGuire due process. *Ahlswede v. Wolff*, 720 F.2d 1108, 1111 (9th Cir.1983) (per curiam), *cert. denied*, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed. 2d 155 (1984).

 At trial, the prosecution introduced evidence that the baby had been physically abused in the past. Some of this evidence

---

1. The *Maxwell* "rule" will no longer be effective for petitions presented to the California Supreme Court after May 6, 1985. On that date, new California Supreme Court appellate rules came into effect. Presently, the California rules provide that "[o]nly the issues set forth in the petition and answer or fairly included in them need be considered by the court." Cal. Rules Sup.Ct. & Cts. of Appeal 28(e)(2) and Advisory Committee Comment, ¶ 4. The present case, however, is governed by *Maxwell*. The appellant filed his petition for hearing on February 26, 1985, before the effective date of the new California rules.

also indicated possible sexual abuse. The evidence was admitted pursuant to California law allowing such evidence to show that a child was a victim of the "Battered Child Syndrome." "The syndrome means that a child has received repeated and/or serious injuries by non-accidental means...." *People v. Jackson,* 18 Cal. App.3d 504, 506, 95 Cal.Rptr. 919, 921 (1971); *see also People v. Steger,* 16 Cal.3d 539, 549 n. 4, 546 P.2d 665, 671 n. 4, 128 Cal.Rptr. 161, 167 n. 4 (1976). Proof of the syndrome "essentially means that the victim's injuries were not inflicted by accidental means...." *Landeros v. Flood,* 17 Cal. 3d 399, 409, 551 P.2d 389, 393, 131 Cal. Rptr. 69, 73 (1976). In other words, proof of the syndrome demonstrates that a child has suffered repeated injuries over a period of time. These cases demonstrate that the California courts have been careful to limit proof of the syndrome to show that the child had not accidentally suffered the injuries. The additional finding that the injuries were probably caused by a particular person may not be made simply on the basis of proof of the syndrome itself. *See Jackson,* 18 Cal.App.3d at 507, 95 Cal.Rptr. at 921.

*Jackson* and *Landeros* make clear that proof of the syndrome does not prove who caused the injuries. That fact, though it may be inferred from proof of who was in contact with or cared for the child, is separate and distinct from proof of the syndrome itself. *Id.* In the case at bar, no one claimed that the child died accidentally. The *prosecution* introduced the McGuire's pretrial statement that the injuries that killed the baby might have been caused by her falling off the couch. McGuire's defense at trial was not predicated on this or any other proof of accident. Rather, he attempted to prove that his wife had killed the baby. The undisputed evidence of the massive injuries to the baby overwhelmingly refuted any inference of accidental death. The only permissible proposition this evidence could prove was whether the baby had suffered accidental or intentional injuries. This proposition was not at issue

in this case. Thus, the probative value of the evidence of these prior injuries was negligible.

In addition, the prejudicial nature of this evidence was inherently great. *Cf. DeRobertis,* 738 F.2d at 171 (in a due process analysis of questioned evidence, the issue is whether the probative value of the evidence outweighs the prejudice to the accused). Proof of prior injuries to a small baby, coupled with the sexual nature of some of the injuries, inevitably prejudices McGuire. More significantly, there was little proof that McGuire was responsible for these injuries. It is certainly logical to infer that the primary care givers of the baby hurt and sexually molested the child on some prior date. The jury, however, was presented with no direct proof of whether McGuire or his wife caused these prior injuries. Either could have been responsible. One possibility, however, had been foreclosed by the prosecution. By offering the wife immunity, the jury was left with only one option—to find McGuire guilty of the murder. Proof of the prior injuries, not necessary to prove that the baby's death was purposeful, could only have further prejudiced McGuire in front of the jury.

The prejudicial quality of the evidence was exacerbated by an instruction given to the jury. The trial court instructed the jury on the prior injury evidence as follows:

> Evidence has been introduced for the purpose of showing that the defendant committed acts similar to those constituting a crime other than that for which he is on trial.... Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show

> . . . . .

> a connection between the other two offenses and the one of which the defendant is accused, so that it may be logically concluded that if the defendant committed the other offenses, he also committed the crime charged in the case.

This instruction specifically told the jury that if it thought McGuire committed the other two "offenses" they could find him guilty of the charged offense. The instruction alone would probably constitute error of constitutional dimension. *See Butcher v. Marquez,* 758 F.2d 373, 378 (9th Cir. 1985); *United States v. Winters,* 729 F.2d 602, 604 (9th Cir.1984). Certainly, coupled with the inherent prejudicial quality of the evidence itself, the error was of such magnitude to deny McGuire a fundamentally fair trial. We hold that McGuire was denied due process by admission of this evidence and its associated jury instruction.[2]

## CONCLUSION

We are troubled that our disposition does not do justice in this case. A baby has been killed. Only the father and mother had access to the baby. One or the other, or perhaps both, are responsible for the death. This appeal, however, only concerns McGuire. Perhaps the state authorities should examine whether the mother fraudulently negotiated her grant of immunity, and if so, whether the immunity can be withdrawn. We express no opinion as to whether the evidence justifies a retrial of McGuire, his wife, or both, for murder.

We REVERSE the district court's denial of McGuire's petition for a writ of habeas corpus. We REMAND to the district court for the grant of a conditional writ. The state is permitted 90 days from this remand to refile.

REVERSED AND REMANDED.

2. Given our disposition of this case, we do not reach or decide the appellant's *Miranda* claim.