Herbert Jack JESSUP,
Petitioner–Appellee,

v.

UNITED STATES PAROLE COMMISSION; F. Scott, Warden, F.C.I., Safford, Arizona, Respondents–Appellants.

No. 88–2665.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 29, 1989.

Decided Nov. 13, 1989.

bear on whether that coercion has carried over into the second confession." *Elstad*, 470 U.S. at 310, 105 S.Ct. at 1293.

Philip Espinosa, Asst. U.S. Atty., Tucson, Ariz., for respondents–appellants.

Herbert Jack Jessup, pro se.

Before BROWNING, PREGERSON and THOMPSON, Circuit Judges.

PREGERSON, Circuit Judge:

After Herbert Jack Jessup was convicted of counterfeiting while on parole from his five-year sentence for tax evasion, the United States Parole Commission ("Commission") revoked Jessup's parole and ruled that the time Jessup spent on parole, his "street time," would not be credited as time served. The district court subsequently granted Jessup's petition for habeas corpus relief on the ground that the Commission failed to advise Jessup before the parole revocation hearing of the possible forfeiture of his street time. The Commission argues on appeal that the district court erred in vacating the forfeiture of Jessup's street time because (1) Jessup waived his right to claim a procedural due process violation by the untimely assertion of his claim; (2) Jessup failed to show that any prejudice resulted from the due process violation; and (3) the proper relief for the due process violation involved here is a rehearing upon proper notice. We reject the government's first two contentions but accept the third.

## BACKGROUND

On January 29, 1981, Herbert Jack Jessup was paroled from his five-year sentence for income tax evasion with 1,216 days (approximately three years and three months) remaining on his sentence. While on parole, Jessup was convicted of conspiracy to possess and utter counterfeit Federal Reserve Notes and received a five-year prison sentence. At the time of his arrest for counterfeiting, Jessup's street time totaled 1,082 days.

Upon learning of Jessup's counterfeiting conviction and sentence, the Commission issued a standard form "Warrant Application" in February 1984, notifying Jessup that a preliminary interview was to take place to determine whether to conduct a parole revocation hearing. The notice did not inform Jessup that the revocation pro-

ceeding might result in the forfeiture of his street time.

In July 1984, Jessup escaped from custody. He was rearrested on November 9, 1984. He pled guilty to the escape, and was sentenced to an additional six-month consecutive term. This conviction, combined with his previous conspiracy conviction, served as the basis for revocation of his parole at a hearing on August 14, 1985. Jessup was informed of the revocation of his parole and the forfeiture of his street time in the Commission's September 10, 1985 Notice of Action.

Upon appeal to the Commission's National Appeals Board in December 1985, the revocation and the forfeiture were affirmed. The Appeals Board stated in its Notice of Action: "By statute, forfeiture of 'street time' is mandatory any time a parolee receives a conviction punishable by a term of imprisonment." Jessup did not raise the forfeiture issue again until he filed his habeas petition.

In September 1986, Jessup's case manager, Phyllis King, informed him that his mandatory release date was January 4, 1988. However, King, in calculating Jessup's remaining prison time, failed to take into account the forfeiture of Jessup's street time. On April 1, 1987, Jessup's new case manager, C.R. Gilkey, advised Jessup that there were no detainers against him, and that he would be required to spend six months at a half-way house after his release from prison. Jessup was also advised that he should begin paying an outstanding $5,000 fine once he was placed in the half-way house. Jessup submitted a payment plan wherein he agreed to pay $200 per month toward the fine upon his release. Later, on May 15, 1987, the district court entered an order which in pertinent part

provided: "Herbert Jack Jessup shall stand committed until payment of the $5,000 fine imposed as part of his sentence." The fine was paid in full on May 18, 1987.

On June 3, 1987, Gilkey informed Jessup for the first time that he was to spend an additional 1,216 days in custody, the time remaining on his 1979 conviction for income tax evasion. Jessup appealed this decision to prison authorities and to the Regional Office of the U.S. Bureau of Prisons. On September 16, 1987, the General Counsel of the U.S. Bureau of Prisons responded to Jessup's July 24, 1987 administrative appeal, stating that the appeal had been denied, and that the prison staff had overlooked the 1,216 days remaining on his original conviction for income tax evasion when they previously calculated Jessup's mandatory release date.

In October 1987, Jessup was granted a statutory interim parole hearing. The panel recommended no change in the order from his initial hearing that required incarceration through the expiration of the consecutive prison sentences he received for counterfeiting (five years) and escape from custody (six months). Jessup appealed this decision to the National Appeals Board in November 1987. While the panel's decision was pending, Jessup filed the instant habeas action with the U.S. District Court for the District of Arizona.

On March 11, 1988, the district court ruled that the Commission's failure to notify Jessup in his parole revocation warrant that his street time could be forfeited violated the notice requirement of 18 U.S.C. § 4214(a)(2)(A).[1] The court stated that there was no requirement that Jessup prove prejudice before he could prevail on his claim, and directed that the Commission

---

**1.** 18 U.S.C. § 4214(a)(2)(A) provides in pertinent part:

Hearings ... shall be conducted by the Commission in accordance with the following procedures:

(A) notice to the parolee of the conditions of parole alleged to have been violated, and the time, place, and purposes of the scheduled hearing....

In addition, 18 U.S.C. § 4213(c)(3) states:

Any summons or warrant issued pursuant to this section shall provide the parolee with written notice of—

(3) the possible action which may be taken by the Commission.

Pub.L. 98–473, Title II, §§ 218(a)(5), 235, Oct. 12, 1984, 98 Stat. 2027, 2031, repealed sections 4213 and 4214 as of November 1, 1986. Sections 4213 and 4214 were therefore in effect at the time of Jessup's parole revocation hearing.

recalculate his release date, giving him credit for the time he spent on parole.

## STANDARD OF REVIEW

We review the district court's decision to grant or deny a habeas corpus petition de novo. *McGuire v. Estelle,* 873 F.2d 1323, 1325 (9th Cir.1989).

## ANALYSIS

### I. Waiver

■ Jessup first learned of the forfeiture of his street time in the Commission's Notice of Action in September 1985. The National Appeals Board affirmed this decision and the forfeiture issue was not raised by Jessup until his habeas petition approximately two years later. The Government contends that because Jessup did not promptly follow through with an appeal of the forfeiture decision, he waived his right to assert this claim in the habeas proceeding. The Government relies on *C.F. Honeycutt v. Ward,* 612 F.2d 36 (2d Cir.1979), *cert. denied,* 446 U.S. 985, 100 S.Ct. 2969, 64 L.Ed.2d 843 (1980), where habeas relief was denied when petitioner did not raise a constitutional issue of which he was aware for 15 years.

*C.F. Honeycutt* relies on Rule 9(a) of the Rules Governing Section 2254 Cases, 28 foll. U.S.C. § 2254, which provides as follows:

*Delayed Petitions*

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

*C.F. Honeycutt,* 612 F.2d at 41.

Rule 9(a) protects the state's legitimate expectation that it will not be called upon, without due cause, to defend the integrity of convictions that occurred years earlier, where records and witnesses are no longer available. *C.F. Honeycutt,* 612 F.2d at 42–43.

■ Rule 9(a) is based on the doctrine of laches; the court must use its discretion in weighing the equities involved. 28 foll. U.S.C. § 2254, Rule 9, Advisory Committee Note (1982). The doctrine of laches "requires not only unreasonable delay but also that the delay work to the detriment of the other party." *Cotton v. Mabry,* 674 F.2d 701, 704 (8th Cir.) (citations omitted), *cert. denied,* 459 U.S. 1015, 103 S.Ct. 374, 74 L.Ed.2d 508 (1982).

Unlike *C.F. Honeycutt,* where the court found that the 15–year delay substantially deprived the State of New York of the opportunity to rebut the petitioner's allegations, *id.* at 705, the present petition posed no such burden for the Government. The Government does not show that it was prejudiced in its ability to respond to the allegations contained in the petition. "[M]ere delay is not sufficient ground for dismissal [of a habeas petition] on the basis of laches. The State must show a particularized prejudice to its ability to respond to the allegation in the petition." *Horace v. Wainwright,* 781 F.2d 1558, 1565 (11th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986).

Furthermore, Jessup's delay was reasonable. Approximately eight months after the National Appeals Board's action, Jessup's case manager mistakenly advised him that his mandatory release date was January 4, 1987. The case manager's calculations ignored the panel's decision that Jessup's street time be forfeited. Acting on this information, Jessup apparently discontinued the appeal of the forfeiture, secured a $5,000 loan to pay his pre-release fine and arranged for post-relief employment. However, upon learning in June 1987 that he would have to spend an additional 1,216 days in custody, Jessup immediately began pursuing his administrative remedies. Upon exhausting these remedies, Jessup filed for habeas relief in December 1987. Even though Jessup had been informed of the forfeiture of his street time in 1985, it was certainly not unreasonable for him to rely on the release date calculated by his case manager and to thereby suspend his appeal of the panel's forfeiture decision.

Because the Government has not demonstrated any actual prejudice in its ability to respond to Jessup's petition, and because petitioner has not unreasonably sat on his rights, we find that Jessup's petition was timely filed. Therefore, Jessup did not waive his right to claim a due process violation in the habeas corpus proceeding.

## II. Due Process

It is well settled in this circuit that the Commission's failure to provide prior notice of the possible consequences of a parole revocation hearing violates the parolee's due process rights. *See Raines v. U.S. Parole Commission*, 829 F.2d 840, 843 (9th Cir.1987) (reversing the Commission's denial of street time credit because the warrant issued to parolee prior to the revocation hearing failed to specify that his street time was subject to forfeiture); *Vanes v. U.S. Parole Commission*, 741 F.2d 1197, 1202 (9th Cir.1984) (reversing the forfeiture of parolee's street time because parolee was not informed in advance of the charges to be considered against him at his parole revocation hearing and the possible consequences of such charges).

■ The Government contends, however, that under CFR § 2.52(c)(2)[2], the forfeiture of Jessup's street time was mandatory because while out on parole he was convicted of a crime punishable by imprisonment. The Government argues that Jessup could not have been prejudiced by a lack of notice because he could not have offered any evidence at the parole hearing to defend against or mitigate the forfeiture of his street time.

The government's argument is without merit. In a recent case, *Boniface v. Carlson*, 856 F.2d 1434 (9th Cir.1988), this court noted that neither *Raines* nor *Vanes* required a showing of prejudice. *Id.* at 1436. The court stated: "Being deprived of this right [to be informed of the charges to be considered at the revocation hearing and their possible consequences] is all the prej-

udice necessary to support [the petitioner's] claim of lack of due process." *Id.* Accordingly, the district was correct in its conclusion that Jessup was denied due process and that he was not required to show prejudice to obtain relief.

## III. Propriety of Rehearing

■ The district court rejected the government's suggestion that the proper remedy for denial of notice was to remand to the Commission with instructions to provide Jessup with a new hearing on proper notice. After the district court's decision in this case we adopted the remand remedy in *Boniface*, 856 F.2d at 1436. This remedy is consistent with the reason for reversal. The basis for our holdings that due process requires notice prior to the revocation of street time is the Supreme Court's ruling, in *Morrissey v. Brewer*, that due process requires notice to a parolee of the violations charged against him prior to revocation so that he may be prepared to respond. 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *see Vanes*, 741 F.2d at 1202 (applying *Morrissey* to street time hearing). Where *Morrissey* has been violated, this court has held that "the district court should require the [Parole] Commission to hold a new revocation hearing and to provide [the petitioner] with notice of the information and witnesses which the Commission weighs against him." *Vargas v. U.S. Parole Comm'n*, 865 F.2d 191, 195 (9th Cir.1988).

It is true that issuance of the writ was not conditioned on remand to the Commission for a noticed rehearing in *Raines* and *Vanes*, but the availability of this remedy does not appear to have been suggested in either case.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

**2.** 28 CFR § 2.52(c)(2) reads in pertinent part: If the parolee has been convicted of a new offense committed subsequent to his release [on] parole, which is punishable by a term of imprisonment, forfeiture of the time from the date of such release to execution of the warrant shall be ordered, and such time shall not be credited to the service of the sentence.