**Jose Eduardo CAMACHO, Petitioner–Appellant,**

v.

**O. Ivan WHITE, Warden, Federal Correctional Institution, Phoenix, Arizona, Respondent–Appellee.**

**No. 89–15521.**

United States Court of Appeals, Ninth Circuit.

Submitted March 14, 1990 [*].

Decided Oct. 26, 1990.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Jose E. Camacho, Florence, Ariz., pro se.

Janet L. Patterson, Asst. U.S. Atty., Phoenix, Ariz., for respondent-appellee.

Before FLETCHER, PREGERSON and NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Jose Eduardo Camacho ("Camacho") appeals the district court's order granting habeas relief from his 1981 parole revocation and remanding his case to the U.S. Parole Commission ("Commission") for a new parole revocation hearing. He also appeals the district court's order denying habeas relief from his 1985 parole revocation. Camacho contends that the district court's orders violate his fifth amendment

rights to equal protection and due process. He argues that he should be awarded habeas relief and an automatic restoration of all "street time" credits forfeited as a result of both his 1981 and 1985 parole revocations. We reject Camacho's contentions and affirm the district court's orders.

## BACKGROUND

On November 25, 1968, Camacho was sentenced to twenty-three years in a federal prison in Arizona for concealing and transporting heroin and assaulting a federal officer. Camacho was paroled on March 16, 1979, but was arrested for attempted burglary on June 21, 1980, and for shoplifting on August 13, 1980, and the Commission issued a warrant to retake him on August 29, 1980.

Camacho was notified that a hearing on whether his parole should be revoked was to be held on March 18, 1981. That notice, however, did not warn Camacho that the time spent on parole ("street time") was possibly subject to forfeiture due to his suspected criminal behavior.[1] The government has conceded that this defect rendered the notice ineffective and violated Camacho's due process rights. On April 3, 1981, Camacho's parole was revoked and all street time accrued during his 1979–81 parole was ordered forfeited. Camacho did not directly appeal that order.

On December 23, 1983, Camacho was paroled for a second time. But he was arrested and charged with burglary, narcotics possession, and auto theft, and failed several drug tests in 1984, and was again notified by a parole warrant that a hearing would be held on whether his parole should be revoked. That warrant also was defective; it did not inform Camacho that his street time was subject to forfeiture. Before the hearing, however, the Commission sent Camacho a "probable cause" letter that stated: "If revocation is ordered, the Commission will also determine whether to reparole you or require service of all or any part of your violator term." After the hearing, on January 7, 1985, Camacho's parole was again revoked, and a portion of the street time accrued during his 1983–84 parole was forfeited. Camacho appealed this revocation order to the Commission, but did not raise the forfeiture notice issue. The Commission denied this administrative appeal.

The Commission reopened Camacho's case in 1986 after he was convicted in Arizona state court of possession of narcotics, forgery, and attempted burglary. Another hearing was held on the question whether Camacho's remaining street time should be forfeited. On January 26, 1987, the Commission ordered forfeiture of all street time remaining from Camacho's 1983–84 parole. Camacho did not appeal this order.

Camacho eventually appealed the forfeitures of street time on insufficient notice grounds in a letter he sent to the Commission in late 1987, in which he requested that the Commission reopen his case and restore 535 days of street time because of defective notice in the parole warrants issued prior to the 1981 and 1985 hearings.[2] The Commission denied the request in a reply dated March 2, 1988.

---

1. Under federal regulations, the Commission generally credits time spent on parole toward the parolee's sentence upon revocation of parole. 28 C.F.R. § 2.52(c) (1989). There are two exceptions to this rule. Subsection 2.52(c)(1) of the regulations provides that if the Commission finds that the parolee intentionally refused or failed to respond to any reasonable request, order, summons or warrant, the Commission may order the forfeiture of the time during which the parolee so refused or failed to respond. Subsection 2.52(c)(2) states that, if a parolee is convicted of a new offense committed after his or her release on parole and punishable by incarceration, street time from the date

of release on parole to the date of execution of the violator warrant shall be forfeited.

2. Under 28 C.F.R. § 2.28(a) (1989), the Commission may reopen a case "at any time upon the receipt of new information of substantial significance favorable to the prisoner." Camacho requested that the Commission reopen his case based on this court's decision in *Raines v. United States Parole Comm'n*, 829 F.2d 840 (9th Cir.1987), in which we reiterated our holding in *Vanes v. United States Parole Comm'n*, 741 F.2d 1197 (9th Cir.1984), that the Commission must notify parolees before revocation hearings that street time credit may be subject to forfeiture.

Camacho then filed a petition for habeas corpus in the district court. The magistrate assigned to the case recommended that the district court grant Camacho a writ of habeas corpus and a new revocation hearing with respect to the 1981 revocation. The magistrate, however, concluded that the defective notice in the 1985 parole warrant was cured by the probable cause letter that the Commission mailed to him prior to that hearing. In his objections to the magistrate's report, Camacho contended, inter alia, that he was entitled to automatic restoration of the street time that was forfeited after the 1981 revocation hearing, rather than a new hearing, as the magistrate recommended.

The district court adopted the magistrate's findings and recommendations in its March 15, 1989 order. The district court held that Camacho received adequate notice regarding the 1985 parole revocation hearing and that the proper remedy for the 1981 due process violation was a new hearing upon proper notice.[3]

Camacho filed a timely notice of appeal. We have jurisdiction over this appeal under 28 U.S.C. § 2253.[4]

**3.** The district court reasoned:

[P]etitioner argues that the relief required in this case is restoration of street time. Petitioner relies on *Raines v. United States Parole Commission* [ ] in making this argument. However, the *Raines* court did not directly address the remedy for relief. The court reversed the judgment of the district court, but gave no directions on the appropriate remedy....

A later Ninth Circuit case squarely addresses this issue. *See Boniface v. Carlson,* [856 F.2d 1434 (9th Cir.1988)]. In *Boniface,* a prisoner's petition for a writ of habeas corpus was based in part upon a parole revocation of street time which was revoked without proper notice. The Ninth Circuit remanded the case to the district court for the purpose of "ordering the Parole Commission to grant petitioner a new hearing upon proper notice." *Id.* [at 1436]. Thus, the magistrate's recommendation that the Parole Commission grant a new hearing upon proper notice is the proper remedy.

*Camacho v. United States Parole Comm'n,* No. CV–88–0550–RCB, at 2 (D.Ariz. Mar. 15, 1989) (order granting habeas relief).

**4.** Camacho did not exhaust, through direct appeal, all administrative remedies available to him before filing his habeas petition in the

## STANDARD OF REVIEW

We review de novo a district court's decision to grant or deny a habeas petition. *Roberts v. Corrothers,* 812 F.2d 1173, 1178 (9th Cir.1987).

## DISCUSSION

### I. 1985 Parole Revocation Hearing

■ The district court held that the parole warrant's failure to notify Camacho that his street time was subject to forfeiture was cured by the Commission's "probable cause" letter, mailed to Camacho before the hearing, which gave notice of possible forfeiture.[5] In *Bowen v. United States Parole Comm'n,* 805 F.2d 885, 887 (9th Cir.1986), we held that language identical to that contained in the probable cause letter sent to Camacho before his 1985 parole revocation hearing provided adequate notice that street time might be revoked. *Bowen v. United States Parole Comm'n* controls on this issue. We, therefore, affirm the denial of Camacho's petition for a writ of habeas corpus based on his 1985 parole revocation.

district court. We have held, however, that the requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition is not jurisdictional. *Brown v. Rison,* 895 F.2d 533, 535 (9th Cir.1990). A district court may, for that reason, excuse a failure to exhaust administrative remedies and reach the merits of a petition. *Id.* In this case, the district court accepted the magistrate's report, which excused Camacho's failure to exhaust because Camacho appealed by letter to the Commission in 1987 and the Commission "addressed the merits of [Camacho's] claims." The government does not argue on appeal to this court that the district court lacked jurisdiction to hear Camacho's case. We, therefore, need not review the decision to excuse Camacho's failure to exhaust his administrative remedies. *Brown v. Rison,* 895 F.2d at 535.

**5.** In his objections to the magistrate's report, Camacho alleged that he never received the probable cause letter. The district court found, however, that Camacho did not make this argument either at his hearing or in his administrative appeal. This finding is supported by the record. The district court correctly refused to entertain the new argument in federal habeas proceedings. *See Bowen v. United States Parole Comm'n,* 805 F.2d 885, 887–88 (9th Cir.1986).

## II.  1981 Parole Revocation Hearing

### A.  Equal Protection

█ The Commission violated Camacho's due process right to adequate notice of the possible consequences of his parole revocation hearing when it failed to notify him before his 1981 parole revocation hearing that the "street time" from his 1979–81 parole was subject to forfeiture. *Jessup v. United States Parole Comm'n*, 889 F.2d 831, 835 (9th Cir.1989) ("*Jessup*"); *Vanes v. United States Parole Comm'n*, 741 F.2d 1197, 1201–02 (9th Cir.1984). The district court correctly granted Camacho's petition for habeas relief on that basis.

█ The district court remanded the matter to the Commission for a new parole revocation hearing conducted pursuant to all applicable due process requirements, based on our holding in *Boniface v. Carlson*, 856 F.2d 1434 (9th Cir.1988) ("*Boniface*"), and did not directly restore the forfeited street time. Camacho contends that the district court violated his right to equal protection in providing the remand remedy because it failed to follow two contemporary district court decisions, *Jessup v. United States Parole Comm'n*, CIV 87–945 TUC–RMB (D.Ariz. Mar. 10, 1988), and *Poma v. Carlson*, CIV–88–246–PHX–EHC (D.Ariz. Aug. 9, 1988), which granted automatic restoration of street time forfeited after inadequately noticed revocation hearings. This contention is without merit.

In *Jessup*, we reversed the district court's award of automatic restoration of forfeited street time credits and held that a new revocation hearing, rather than an automatic restoration of street time credits, was the appropriate remedy for due process violations that result from inadequate notice. 889 F.2d at 835. In so holding, we approved of the remedy granted in *Boniface*, 856 F.2d at 1436, on which the district

court relied when it denied Camacho's request for automatic restoration of street time in this case.[6] We based our holding in *Jessup* on the principles underlying the requirement of adequate notice of possible street time revocation. We explained:

> This remedy is consistent with the reason for reversal. The basis for our holdings that due process requires notice prior to the revocation of street time is the Supreme Court's ruling, in *Morrissey v. Brewer*, [408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972),] that due process requires notice to a parolee ... prior to revocation so that he may be prepared to respond. Where *Morrissey* has been violated, this court has held that "the district court should require the [Parole] Commission to hold a new revocation hearing and to provide [the petitioner] with notice of the information and witnesses which the Commission weighs against him."

*Jessup*, 889 F.2d at 835 (citations omitted) (quoting *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 195 (9th Cir.1988)).[7]

The district court correctly relied on *Boniface* and remanded the case for a new parole revocation hearing, giving Camacho the remedy to which he was entitled. The fact that two other district courts, without the benefit of our decisions in *Boniface* and *Jessup*, granted the automatic restoration remedy in different cases does not entitle Camacho to that relief. *Cf. Beck v. Washington*, 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962) (lack of uniformity in state court decisions does not form basis for equal protection clause violation).

### B.  Due Process

█ Camacho also challenges the remand remedy on due process grounds. He

---

6. *Boniface*, like *Jessup*, was decided *after* the two district court decisions relied on by Camacho in his equal protection argument.

7. In two cases decided before *Jessup* and *Boniface*, *Raines v. United States Parole Comm'n*, 829 F.2d at 845, and *Vanes v. United States Parole Comm'n*, 741 F.2d at 1202, we did not condition grant of the writ on remand to the Commission for a noticed rehearing. In reconciling the apparent conflict between *Raines* and *Vanes* and *Boniface*, we explained in *Jessup* that, while "issuance of the writ was not conditioned on remand to the Commission for a noticed rehearing in *Raines* and *Vanes*, ... the availability of this remedy does not appear to have been suggested in either case." *Jessup*, 889 F.2d at 835.

contends that a new hearing will not redress the due process violation he suffered in 1981 because nine years have passed since that violation and, therefore, he will be unable to prepare an adequate defense to the charges that will be made against him at a new revocation hearing. We did not address in *Jessup* or *Boniface* the question whether delay rendered inadequate the remedy of a new parole revocation hearing and required outright restoration of street time credits in those cases. *See Jessup*, 889 F.2d at 835;[8] *Boniface*, 856 F.2d at 1436. Although we conclude that, in some circumstances, delay may require automatic restoration of street time in lieu of a new hearing, we hold that, in this case, Camacho is only entitled to the remand remedy he received.

The Supreme Court made clear in *Morrissey v. Brewer*, 408 U.S. at 488, 92 S.Ct. at 2603, that a parolee's due process rights are violated when a parole revocation hearing is not held "within a reasonable period after the parolee is taken into custody."[9] Applying this principle in cases where habeas petitioners challenged parole revocation hearings based on delay, we, along with other circuits, have held that a due process violation occurs "only when [the petitioner] 'establishes that the Commission's delay in holding a revocation hearing was both unreasonable and prejudicial.'" *Vargas v. United States Parole Comm'n*, 865 F.2d at 194 (quoting *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C.Cir.1983)); *see also Hopper v. United States Parole Comm'n*, 702 F.2d 842, 847 (9th Cir.1983); *Heath v. United States Parole Comm'n*, 788 F.2d 85, 89 (2d Cir.), *cert. denied*, 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986).

In this case Camacho does not argue that delay invalidated his 1981 parole revocation hearing. Rather, he contends that, because of delay, the *remedy* of remand for a new hearing upon proper notice is inadequate. We based our holding in *Jessup* on the principles underlying *Morrissey v. Brewer*. *See Jessup*, 889 F.2d at 835. We see no reason why the same due process analysis employed in *Morrissey* should not apply here. A petitioner who was denied due process because of the inadequacy of the notice of his parole revocation hearing and now challenges the adequacy of the remedy (a properly noticed rehearing), because the rehearing comes so long after the events giving rise to the revocation, has the same concerns about delay as the petitioner whose original hearing was delayed. The test, we conclude, is the same: a petitioner challenging the remand remedy under *Jessup* must demonstrate both that the delay is unreasonable and that he or she will be prejudiced by the delay.

■ Applying this test, we hold that due process considerations do not require restoration of street time in lieu of noticed rehearing in Camacho's case. Camacho himself was the primary cause for the delay he now contends will violate his due process rights. He did not appeal the 1981 forfeiture until 1987. Much of the delay he now challenges is attributable to his failure to act. The delay here was, therefore, not unreasonable. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972) (explaining that, in determining whether delay denies a defendant the right to a speedy trial, a factor to be considered is the cause of the delay); *Hanahan v. Luther*, 693 F.2d 629, 634 (7th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983) (same); *cf. Spotted Bear v. McCall*, 648 F.2d 546, 547–48 (9th Cir.1980) (holding that a prisoner could not claim prejudicial delay in chal-

---

8. In *Jessup*, the government argued that the delay of approximately six years between the due process violation and the appeal in that case constituted a waiver by Jessup of the inadequate notice claim. 889 F.2d at 834–35. We rejected the argument because we held that the delay in Jessup's case was reasonable; the government had failed to accurately inform Jessup that his street time had been forfeited. *Id.* Jessup apparently made no argument that the delay rendered inadequate the remand remedy, and the issue was not discussed in the opinion.

9. The Commission's regulations require that the revocation hearing be held within 60 days of the probable cause determination or within 90 days of the execution of the violator warrant. 28 C.F.R. § 2.49(e) (1989).

lenging validity of parole revocation hearing where delay was due to the petitioner's detention in state facilities based on his state crimes).

The remedy of remand for a properly noticed hearing is appropriate in this case, despite the time elapsed since the initial 1981 violation.

## CONCLUSION

For these reasons, the district court's judgment is AFFIRMED. The case is remanded to the Commission for a new parole revocation hearing regarding Camacho's 1980 convictions.