33 F.3d 59
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Calvin THOMPSON, Petitioner-Appellant,
v.
Sherman HATCHER, Deputy Attorney General, Respondent-Appellee.
 No. 93-16856.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 8, 1994.*
Decided Aug. 10, 1994.
 
 Before: NORRIS, THOMPSON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Calvin Deandre Thompson challenges on ten grounds his conviction for first degree murder with a deadly weapon and attempted murder with a deadly weapon. We affirm the district court's denial of his federal habeas petition.
 
 1. Sufficiency of the Evidence
 
 3
 Thompson argues insufficiency of the evidence because the state's witnesses were not credible and because conflicting evidence was presented. First, he claims that the state relied primarily on a single eyewitness, Mitchell Thomas, who was a friend of both victims. Second, he claims that the two cell mates to whom he confessed are not credible because they were both given more lenient treatment in exchange for their testimony. It was for the jury to decide the credibility of these witnesses in light of the impeachment evidence presented.
 
 
 4
 Thompson also claims that the testimony of several defense witnesses presented a reasonable doubt about his guilt. Although conflicting evidence was presented in this case, the evidence of guilt is sufficient to support his conviction: (1) Thomas, who was shot four times during the altercation, identified Thompson as the perpetrator, Reporter's Transcript ("RT") 300-01; (2) the shootings involved gang rivalries, RT 644, and on the afternoon of the incident, Thomas and Thompson, who belonged to rival gangs, were involved in an argument, RT 682-85; (3) Thompson's cousin, Bobby Jenkins, relayed to police that Thompson bragged about killing Vaughns and shooting Thomas, RT 643; and (4) two inmates at the Clark County Detention Center testified that Thompson boasted about killing Vaughns, RT 577-80, 883-84. Based upon the record in this case, we cannot conclude that "no rational trier of fact could have found guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979).
 
 2. Best Evidence Rule
 
 5
 Thompson argues that the trial judge erred in admitting an unsigned transcript of a detective's interview with Thompson when the original taped interview was available. The interview was conducted immediately after Thompson was arrested, and later transcribed. Because the content of the conversations, rather than the content of the tapes is in question, admission of a transcript documenting the conversations does not violate the best evidence rule. United States v. Gonzalez-Benitez, 537 F.2d 1051, 1053-54 (9th Cir.1976).
 
 
 6
 In this case, the transcript was allowed in because portions of the tape were unintelligible. The transcript properly memorialized the conversation between Thompson and the detective. Hence, the admission of the transcript conforms to the requirements of Gonzalez-Benitez. In any event, the admission of the transcript was not prejudicial. The tape and the transcript recorded the same conversation. Defense counsel was given an adequate opportunity to compare the tape with the transcript and notify the court of any discrepancies. Admission of the transcript violated neither the best evidence rule, nor due process. See McGuire v. Estelle, 873 F.2d 1323, 1325 (9th Cir.1989).
 
 3. Inflammatory Testimony and Evidence
 
 7
 At the penalty phase of Thompson's trial, the sentencing judge received evidence about a gang-related altercation six weeks before the murder and attempted murder. The Supreme Court has held that "consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing: 'any sentencing authority must predict a person's probable future conduct when it engages in the process of determining what punishment to impose.' " Skipper v. South Carolina, 476 U.S. 1, 5 (1986). The evidence of the prior gang-related altercation did not violate due process.
 
 4. Hearsay
 
 8
 Thompson challenges the hearsay testimony about prior inconsistent statements of a defense witness, Bobby Jenkins. He claims that the introduction of prior inconsistent testimony, though admissible as a hearsay exception, violates the Confrontation Clause of the Sixth Amendment. However, the admission of this hearsay testimony about Bobby Jenkins' prior inconsistent statements did not violate the Confrontation Clause because Jenkins was a witness at trial, and Thompson had sufficient opportunity to cross-examine him regarding any inconsistency in his statements. See California v. Green, 399 U.S. 149, 158 (1970).
 
 5. "Theory of the Case" Jury Instruction
 
 9
 Thompson claims that the judge erred in refusing to instruct the jury on his theory of the case. His proposed jury instruction, reads as follows:
 
 
 10
 You are instructed that it is CALVIN THOMPSONS theory of this case that David Vaughns was killed by somebody on the landing of the stairway of the Comfort Inn, while Mr. Thompson was inside.
 
 
 11
 This is a case of mistaken identity. Mitchell Thomas was shot four times including one bullet through the face. He was standing behind the alleged killer and did not have the time or the vantage point to properly identify the person who done the shooting.
 
 
 12
 While a trial judge may be required to instruct a jury on a valid legal defense, see United States v. Sotelo-Murillo, 887 F.2d 176 (9th Cir.1989), or even to present Thompson's theory of the case, she is not required to approve an instruction that merely reiterates Thompson's view of the facts. The trial court's refusal to give the proffered instruction did not "by itself so infect[ ] the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).
 
 6. Implied Malice Jury Instruction
 
 13
 Thompson also claims that the trial judge improperly gave an implied malice instruction. The crux of this argument is that implied malice cannot support an attempted murder conviction, because the "attempt" necessarily requires a greater mental state. This claim has no merit. First, the implied malice instruction was given in conjunction with the murder, rather than the attempted murder instructions. Second, the jury was specifically instructed that the crime of attempted murder required specific intent. Consequently, this instruction did not render the trial fundamentally unfair. Henderson, 431 U.S. at 155.
 
 7. Prosecutorial Misconduct
 
 14
 Thompson alleges that the prosecutor committed misconduct by referring in his closing argument to a statement of Thompson's that was not properly admitted into evidence. The statement, however, was properly admitted. See discussion of best evidence rule, supra at 3.
 
 8. Sixth Amendment Right to Counsel
 
 15
 Thompson claims that the trial court's admission of the testimony of Darren Phillips and Richard Feeder, both jailhouse informants, violated his Sixth Amendment right to counsel under Massiah v. United States, 377 U.S. 201 (1964) (holding that once a defendant's Sixth Amendment right to counsel attaches, neither the government nor its agents may "deliberately elicit" incriminating statements from a defendant in the absence of counsel).
 
 
 16
 Here, there was no Massiah violation because there is no evidence that the government or its agents did anything to elicit incriminating statements from Thompson. In fact, both informants testified that the information they obtained came out of casual conversations with Thompson. Only after the conversations occurred did the informants first contact the government offering to divulge the information. RT 571-94, 878-917. The informants' conduct, therefore, did not violate the Sixth Amendment. See Kuhlmann v. Wilson, 477 U.S. 436, 439 (1986) (finding no violation of Massiah where the government did nothing more than place an informant in the jail cell with a defendant with instructions not to ask any questions, but just to "keep his ears open").
 
 9. Ineffective Assistance of Counsel
 
 17
 Thompson claims he was denied effective assistance of counsel during pre-trial, trial, and on direct appeal because his original counsel withdrew prior to trial. He does not, however, explain how this affected his trial, nor does he specify any instances of misconduct by his trial or appellate counsel. By not specifying the acts of his counsel that were objectively unreasonable, or the resulting prejudice, Thompson fails to show that he was denied effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (ineffective assistance requires showing that counsel's performance fell below an objectively reasonable standard, and that the deficiency prejudiced his defense).
 
 10. Peremptory Challenge
 
 18
 Thompson claims that the prosecutor improperly exercised a peremptory challenge to strike a black female prospective juror from the venire on the basis of her race, in violation of Batson v. Kentucky, 476 U.S. 79 (1986). When Thompson challenged the strike, the prosecutor identified two non-racial reasons for his challenge: (1) the juror did not fit the desired profile for the jury (older men); and (2) he believed that the juror might be attracted to Thompson. The trial court accepted the prosecutor's explanation and excused the struck juror.
 
 
 19
 Because the trial court's evaluation of the prosecutor's explanations revolves around issues of credibility and contextual facts, it is entitled to great deference. Batson, 476 U.S. at 98; see also 28 U.S.C. Sec. 2254(d); Hernandez v. New York, 111 S.Ct. 1859, 1868 (1991) (the trial court's decision "on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal"). Thus, we see no basis for refusing to give the trial court's evaluation the deference to which it is entitled.
 
 
 20
 In his reply brief, and in a letter requesting oral argument, Thompson claims that the prosecutor's use of a peremptory challenge to strike this juror was also invalid because it was based on gender. The prosecutor's strike, by his own admission, was in fact based partially on gender. After Thompson's conviction became final, the Supreme Court extended Batson to prohibit peremptory strikes based on gender. J.E.B. v. T.B., 114 S.Ct. 1419 (1994). However, because the rule established in J.E.B. is not retroactive, see Allen v. Hardy, 478 U.S. 255 (1986), Thompson may not claim the benefit of it on collateral review. See Teague v. Lane, 489 U.S. 288 (1989).
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3