**COPPER RIVER SCHOOL DISTRICT, a Public School District, Appellant,**

v.

**STATE of Alaska, the Alaska Department of Education, and Harold J. Raynolds, Commissioner Alaska Department of Education, Appellees.**

**No. S–488.**

Supreme Court of Alaska.

June 28, 1985.

Robert C. Erwin, Peter C. Gamache, Erwin, Smith, Garnett, Jarrell & Moderow, Anchorage, for appellant.

Bruce M. Botelho, Sp. Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

### I. INTRODUCTION

■ This case stems from the Department of Education's failure to schedule an administrative hearing within the 30-day period specified in the applicable regulation. The Copper River School District had requested a hearing to contest the Department's determination that the district must repay an overpayment of education funds received. The applicable regulation provides that "[i]n no event will the date of the hearing be more than 30 days after the [school district's] request . . . is received by the department." 4 AAC 40.040(d). However, in this case the assigned hearing officer did not contact the school district until 3 days after the 30-day period ended. He subsequently notified the school district that a hearing in the matter would be held several days later, on a date that was about 9 days after the 30-day deadline. The school district refused to participate in that hearing, contending that the Department's jurisdiction and the hearing officer's authority had expired. The central question here is whether 4 AAC 40.040(d) is mandatory or merely directory. If the regulation is mandatory, strict compliance is required; if it is directory, substantial compliance is sufficient absent significant prejudice to the other party. In this case, given the lack of significant prejudice to the school district, we affirm the superior court's ruling in favor of the Department.

### II. FACTS AND PROCEEDINGS

In 1980–81 the Department of Education ("Department") funded the Copper River School District's special education instruction, paying "instruction units" based on the average daily membership of special education students in attendance. The school district was required to keep attendance records showing each student's entry and exit dates in attending class.

On September 20, 1982 the Department provided the school district with a legislative audit division's interim finding of an overpayment of special education funds for the 1980–81 school year and its recommendation that the Department request repayment from the school district. On December 23, 1982, after reviewing supplemental information from the district, the audit division issued its final recommendation "that the Department recover the one (1) special education unit or $40,175" overpaid in 1980–81.

On June 13, 1983 the Department formally requested that the school district repay the amount at issue.

In a letter dated July 12, 1983 the Superintendent of the Copper River School District denied the allegation of overpayment, asked that the Department make a new

determination and rescind the $40,175 bill, and also requested an Administrative Review under 4 AAC 40.030.

On August 1, 1983 the Department issued an Administrative Review Report denying the relief sought by the school district.

On August 16 the school district requested a formal administrative hearing before the Department pursuant to 4 AAC 40.-040(a).[1] The school district also objected to the alleged arbitrariness of the Department's audit process and asserted that laches should bar the Department's collection efforts because almost two years had elapsed since the alleged overpayment.

On August 18 the Department received the school district's Request for Hearing. That date began the 30-day period during which a hearing is to be provided under 4 AAC 40.040(d).

On September 18, 1983 the 30-day period ran out. No hearing had been held in the matter; nor had the school district received any notice of the appointment of a hearing officer under 4 AAC. 40.040(c).

On September 22 the appointed hearing officer called the school district's attorney to schedule the administrative hearing. The latter stated that the district would not participate in the hearing, because the Department's jurisdiction and the hearing officer's authority had expired on September 19.

On September 24, the school district was notified that an administrative hearing was scheduled for September 27. That same day the school district replied that it would not participate in the scheduled hearing. The school district continued to assert that the Department lacked jurisdiction to hear the matter, that the hearing would be prejudicial to the school district, and that the hearing as scheduled did not allow enough time to secure the presence of the school district's witnesses.

On September 26 the school district sued in superior court for an injunction and a declaratory judgment against the Department. The parties then stipulated to postponing the administrative hearing until after the outcome of the court action.

In superior court the school district argued (1) that the Department had denied the district due process by failing to provide a timely hearing and (2) that various regulations were unconstitutional.[2] The superior court rejected the school district's arguments and dismissed both causes of action.[3]

---

1. 4 AAC 40.040 (eff. 10/16/81) provides:
 REQUEST FOR HEARING. (a) A district may request a formal hearing on the department's final action if the commissioner's designee does not grant the relief sought.
 (b) The request for hearing must be in writing, by certified mail, and must be received by the department no later than 15 calendar days after the date the district receives the decision under 4 AAC 40.030(b)....
 (c) Within 10 days after receipt of the request for hearing made under (a) of this section, the commissioner will appoint a hearing officer who is not an employee of the department.
 (d) Within five days after his appointment, the hearing officer will establish a date, time and place for the hearing. In no event will the date of the hearing be more than 30 days after the request made under (a) of this section is received by the department.

2. The school district asserted that due process was violated in that (1) the burden of proof and expense of an appeal are placed on the school district, (2) the school district is not given subpoena powers, and (3) there is no statute provid-

ing a period of limitation after which the Department cannot demand the return of overpayments. The superior court correctly rejected this argument. It would make no sense to place the burden of proof on the Department to demonstrate the nonexistence of attendance records that are supposed to be in the district's control. Moreover, not only does the Department itself lack subpoena power but we discern no case in which any court has concluded that due process somehow requires that an administrative appellant be accorded subpoena power. Finally, there is no constitutional necessity for a special statute of limitations applicable to Departmental requests for repayments of overpayments. The doctrine of laches would afford adequate protection to a school district faced with grave prejudice caused by an unreasonable delay by the Department.

3. The superior court also stated that, although neither side had raised the issue, the district should have to exhaust its administrative remedies before taking its constitutional claims to court. Here there are no circumstances indicat-

On appeal the school district argues that the superior court erred in finding that the Department could waive the 30-day deadline of 4 AAC 40.040. The district also asserts a laches argument, claiming that the Department waited too long to request repayment of an overpayment made in the 1980–81 school year.

## III. DISCUSSION

### A. THE DISTRICT'S LACHES ARGUMENT

We find the school district's laches argument to be without merit. The school district claims that the Department waited too long in "waiting until the 1983–84 year" to demand repayment of the 1980–81 overpayment in special education funds. Actually, the Department notified the school district in September 1982 of the legislative audit division's initial finding of an overpayment; and in December 1982 that division issued its final position, recommending repayment. The Department formally demanded repayment in June 1983. Moreover, Department of Education manuals listed in 4 AAC 06.120 and 4 AAC 33.020(g) [4] instruct school districts to maintain records for *three years* after the end of the school year.[5]

Our position on the doctrine of laches is that, in order for this equitable defense to prevail, a court must find *both* an unreasonable delay in seeking relief *and* resulting prejudice to the defendant. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974). In *Concerned Citizens* we stated that:

The doctrine creates an equitable defense when a party delays asserting a claim for an unconscionable period.... Sustaining this defense requires a decision by the trial court that the equities of the case justify refusal to hear and decide a party's claim. It is an act of discretion which will not be interfered with unless we feel a definite and firm conviction that a mistake has been committed.

*Id.* at 457 (footnotes omitted). We again emphasize that the applicability of the doctrine of laches to a particular case "turns as much upon the gravity of the prejudice suffered by the defendant as the length of a plaintiff's delay." *Id.* In this case we agree with the superior court that the school district did not demonstrate any prejudice resulting from the Department's arguable slowness in formally seeking to collect the overpayment of special education funds.

### B. MUST THE DEPARTMENT STRICTLY COMPLY WITH THE 30-DAY DEADLINE OF 4 AAC 40.040(d)?

Whether the Department may be allowed a late scheduling of a requested hearing depends on whether the regulation at issue is deemed *mandatory* or *directory*. In an analogous case, *City of Yakutat v. Ryman*, 654 P.2d 785 (Alaska 1982), one issue before us was whether the city's 9-day delay in complying with a tax-assessing deadline should invalidate certain assessments levied against a taxpayer. We had previously held that statutory provisions governing the form of notice to a taxpayer or the taxpayer's right to contest the as-

---

ing that this case should come under the inadequacy, futility, or irreparable-injury exceptions to the doctrine of exhaustion of administrative remedies. *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499–500 (9th Cir.1980); *Ostman v. State*, C.F.E.C., 678 P.2d 1323 (Alaska 1984); *Eidelson v. Archer*, 645 P.2d 171 (Alaska 1982). As for the remaining exception, the voidness of an administrative proceeding, this turns on whether the deadline regulation is waivable in this case. As discussed herein, we find the regulation to be waivable by the Department absent a showing of substantial prejudice to a school district seeking administrative review.

4. Repealed 9/22/84.

5. Also, AS 14.17.190(b) provides:

(b) Each district shall maintain financial records of the receipt and disbursement of public school foundation money and money acquired from local effort. The records must be in the form required by the commissioner and are subject to audit by the commissioner or the board *at any time.*

(Emphasis added).

sessment must be strictly construed; and that total compliance is necessary to protect the taxpayer. *Stephens v. Rogers Construction Co.*, 411 P.2d 205, 207 (Alaska 1966); *Johnson v. Miller*, 391 P.2d 437, 440–41 (Alaska 1964). However, the requirements of tax statutes "which are intended to serve primarily as guidelines for the orderly conduct of public business are more likely to be considered directory" rather than mandatory. *Ryman* at 790.

The difficulty in *Ryman*, like the difficulty in the case now before us, is that the deadline at issue serves a dual purpose, both according procedural benefits to affected individuals and also promoting the orderly conduct of public business. As we explained in *Ryman:*

> While the statutory deadlines for the assessment and levy of taxes undoubtedly serve to structure and regulate the internal operations of the taxing authorities, they also serve the interests of taxpayers. Compliance with these deadlines provides timely notice to the taxpayer of his annual assessment, thereby allowing the taxpayer to calculate with some degree of certainty the extent of his tax liability and to plan his annual financial affairs so as to meet this obligation. We therefore reject the notion that these deadlines can be characterized solely as administrative guidelines. It does not necessarily follow, however, that a tax levy is invalid whenever the taxing authority has failed to comply strictly with the statutory deadlines. While there are instances where a substantial delay in the assessment and fixing of taxes or the mailing of tax statements will seriously prejudice taxpayers' interests, there are also instances where minor deviations from these statutory deadlines will result in little, if any, such prejudice. Rigid adherence to a rule of strict compliance in all cases would in our view be unreasonable.

> [F]inally, serious practical consequences will follow from characterizing

the statutory deadlines in this case as mandatory. The application of a rule of strict compliance to the statutory deadlines for the levying of taxes could seriously handicap the operation of local governments. Any deviation from the statutory norms, however slight or inadvertent, would automatically invalidate the entire assessment process. A significant source of revenue for local governments would be forfeited due to the mistake or dereliction of public officials. *Ryman* at 790–791.

 We view the 30-day deadline of 4 AAC 40.040 to be directory. In line with our view in *Ryman*, the burden should be on the Department of Education to demonstrate *substantial compliance* with the regulation at issue. Given that the Department's slight delay amounted to substantial compliance, its action should be upheld unless the school district has demonstrated that the imperfect compliance, the 9-day delay, resulted in substantial prejudice to the school district's interests. In this case the school district has not shown that any witnesses became unavailable or that its attendance records were destroyed at the end of the 30-day period.[6]

 In sum, we find that the superior court's decision allowing the Department to schedule a hearing 9 days late was in accord with our decision in *Ryman.* Here the school district has made no showing of any significant prejudice resulting from the Department's substantial compliance with 4 AAC 40.040(d).

AFFIRMED.

---

**6.** The deputy attorney general in charge of this case also submits by affidavit that he offered to continue the hearing date until the school district was ready to proceed.