753 P.2d 1194

**Robert Benjamin STEWART, Plaintiff–Appellee,**

v.

**ARIZONA BOARD OF PARDONS AND PAROLES; Richard Ortiz, Ron Johnson, Patricia Gilbert, Arter Johnson, Robert Kennerly, John Sloss, Ray Flores members of the ABPP, Defendants–Appellants.**

No. 1 CA–CIV 9650.

Court of Appeals of Arizona, Division 1, Department D.

April 14, 1988.

Robert K. Corbin, Atty. Gen. by William J. White, Asst. Atty. Gen., Phoenix, for defendants-appellants.

Robert Benjamin Stewart, in pro. per.

## OPINION

GRANT, Judge.

The appellee, Robert B. Stewart (Stewart), who is incarcerated at Arizona State Prison–Florence, filed a special action in the Maricopa County Superior Court requesting a court-ordered release from prison. The appellant, the Arizona Board of Pardons and Paroles (Board), appeals from the trial court's granting of Stewart's motion for summary judgment.

Stewart was convicted of first degree rape and sentenced on September 23, 1972, under the former criminal code to serve 40 years to life. He has no mandatory release date and no sentence expriration date. He was first eligible for parole in January, 1986. Following a hearing on Stewart's parole application the Board voted on November 5, 1986, to grant Stewart a general parole. Chairman Richard Ortiz and Ron Johnson voted for parole and Ray Flores voted against parole. Because Johnson felt "uncomfortable" with his vote, he requested a rehearing. Consequently, Chairman Ortiz requested that Stewart's application be placed on the December agenda for reconsideration.

Shortly after the November hearing the Board issued a letter to Stewart and to the Arizona Department of Corrections (ADOC) announcing that the Board had granted Stewart parole. The Board also issued a document entitled "Proclamation of Community Parole." This proclamation, signed by Chairman Ortiz and dated November 5, 1986, stated "... it appears ... that the [inmate] will live at liberty without violating the law ..., the Board of Pardons and Paroles of the State of Arizona ... does authorize release upon the community...." Stewart signed the proclamation on November 17, 1986, thereby accepting the conditions of parole.

Although the state in its brief states "[n]otice of the Board's desire to reconsider its decision respecting Stewart was issued on November 20, 1986," this "notice" is simply a "housekeeping" memo from the assistant executive director requesting that Stewart's application be placed on the December agenda. The only notice Stewart received was on November 19, 1986, two days after the parole proclamation had been signed. On that date he was informally notified of the Board's newest intention. The Board advised Wendell H. England, an ADOC counselor, that Stewart would be scheduled for another Board hearing. It was England who passed this news on to Stewart. Although England "did not specifically state" that Stewart would have a personal hearing, England avows that he indicated to Stewart that he "thought this would be the case."

On December 1, 1986, the Board voted unanimously to reconsider Stewart's appli-

cation for parole. The Board subsequently voted to deny Stewart parole. This time, only Chairman Ortiz voted for parole. Johnson joined with Flores and voted against parole. The Board advised Stewart and ADOC by letter that it had denied Stewart's application for parole.

The state does not deny that parole was granted but argues that the issue on appeal is whether the Arizona Board of Pardons and Paroles has the inherent authority, before a prisoner is actually released, to reconsider and deny a parole previously granted. Furthermore, the Board maintains that Stewart's due process rights were not violated when it failed to give him official notice of the second hearing or an opportunity to be heard.

██ In justifying the Board's actions, the state maintains that Stewart was not yet ready for release. Before addressing the Board's authority to reconsider Stewart's application for parole, we turn to the question of whether Stewart was ready for release. By affidavit, Chairman Ortiz stated that "Stewart did not have a complete or approved program." At a minimum, such program includes a designated place to reside and either a job, or job training or school program. *Thomas v. Arizona Board of Pardons and Paroles*, 115 Ariz. 128, 129, 564 P.2d 79, 80 (1977).

██ Stewart and the record both suggest that Chairman Ortiz' affidavit is in error. The record includes a letter dated October 20, 1986 (16 days before the first parole hearing). This letter, from Theron Weldy, the president of Weldy Associates, a private practitioner engaged in consulting and psychotherapy, unambiguously offered Stewart employment. The record also includes an affidavit by Weldy in which he states that Chairman Ortiz personally called him on the afternoon of November 5, 1986, the date of the original parole hearing. Weldy maintains that the two men

spoke for approximately 25 minutes. During this conversation, Weldy states that Chairman Ortiz not only complimented him on his willingness to hire Stewart but also on Stewart's release program.[1]

Moreover, although the state submitted a reply brief, it failed to address Stewart's contention that the allegation he "did not have a complete or approved program" was "poppycock." Based on this record we therefore conclude that at the time of the November hearing Stewart had a complete and acceptable release program.

██ The legislature intended to give the Board "sole discretion" to determine whether to grant or deny parole. A.R.S. § 31–412(A); *Stinson v. Arizona Board of Pardons and Paroles*, 151 Ariz. 60, 61, 725 P.2d 1094, 1095 (1986). This court may not substitute its view for that of the parole board. *Cooper v. Arizona Board of Pardons and Paroles*, 149 Ariz. 182, 184, 717 P.2d 861, 863 (1986). Limited review by special action of parole board decisions is available. *Broadhead v. Arizona Board of Pardons and Paroles*, 151 Ariz. 37, 40, 725 P.2d 744, 747 (App.1986). This court may review acts of the Board to determine whether the Board exceeded its legal authority. *See Worth v. Board of Pardons and Paroles*, 146 Ariz. 97, 703 P.2d 1246 (App.1985); *Cawley v. Arizona Board of Pardons and Paroles*, 145 Ariz. 387, 701 P.2d 1195 (App.1984), *approved and supplemented*, 145 Ariz. 380, 701 P.2d 1188 (1985). We may also determine when an inmate has been denied due process. *Stinson v. Arizona Board of Pardons and Paroles*, 151 Ariz. 60, 725 P.2d 1094; *Cooper v. Arizona Board of Pardons and Paroles*, 149 Ariz. 182, 717 P.2d 861.

## THE BOARD'S AUTHORITY TO RECONSIDER

On appeal, the state argues that the "power to reconsider action taken is inherent in the power to act, if timely done."

---

1. We note that the appendices to Stewart's answering brief include an ADOC interdepartment memo, captioned "re: Stewart v. Arizona Board of Pardons and Paroles." The memo's author notes that the attorney general's office advised her that certain affidavits by ADOC employees and contractors "[were] detrimental to the state's case." The memo proceeds to outline a new procedure within ADOC whereby in the future all such affidavits must be reviewed prior to signature unless prepared by an ADOC attorney.

The state also maintains that "because there is no evidence to be considered other than that presented at the original hearing," the only procedures required were "additional deliberation and voting."

The state argues that the instant case is similar to that of *Christopher v. United States Board of Parole*, 589 F.2d 924 (7th Cir.1978). The court in *Christopher* considered the due process rights of a federal prisoner who had been given a parole date and transferred to a minimum security community treatment center in preparation for release, but who was denied release when the Board discovered that evidence not presented at the parole hearing might be pertinent to his parole.

The state relied heavily on *Christopher* to defend against Stewart's special action in superior court. That court, however, rejected the state's position. In granting Stewart's motion for summary judgment and denying a similar motion by the state, the court stated:

> Respondent takes the position that the proclamation of parole is not effective to the extent of entitling petitioner to the due process requirements of *Morrissey v. Brewer* in order to terminate it, because petitioner had not actually been released to the streets and an approved program had not been developed. The authority cited by respondent for its position does not support its position in the opinion of the court.

We agree that *Christopher* is not dispositive. In *Christopher*, the Seventh Circuit noted that "[the government] has a very definite interest in rescinding an improper determination because it is the public which suffers when a convicted criminal, who should not have, reaches the freedom of an effective parole." *Christopher*, 589 F.2d at 931. Because of this interest, the federal parole system provides for what the *Christopher* court characterized as an "inchoate grant of parole." *Id.* at 925, n. 1. In fact, a published federal rule provides that a "grant of parole shall not be deemed effective until a certificate of parole has been delivered to the prisoner." *Id.*

Although an inmate who has been given a parole grant has a "justifiable expectation of being released on parole on the date set" under the federal system, this right is not absolute. *Id.* at 927. Published federal regulations provide that the release is "conditioned upon the continued good conduct by the prisoner and the completion of a satisfactory plan for parole supervision" and upon the absence of "new information adverse to the prisoner regarding matters other than institutional misconduct." *Id.* at 927–28.

In Arizona, the Board is required by statute to file its rules and regulations with the Secretary of State. A.R.S. § 41–1004; *Thomas v. Arizona Board of Pardons and Paroles*, 115 Ariz. at 129, 564 P.2d at 80. Unlike the federal rules governing parole, Arizona's rules do not provide for an identifiable point in time at which parole becomes effective. The rationale of *Thomas* is applicable here. Although the Board's rules and regulations define rescission, they include no procedure by which it may be accomplished. The rules and regulations do, however, carefully enumerate the procedures for the original determination either to grant or deny parole, and to revoke a previously granted parole. To support its contention that the Board was only *rescinding*, not revoking Stewart's parole, Stewart must have necessarily had a status other than that of parolee. Nothing in the Board's rules and regulations remotely suggest a procedure for rescission similar to that provided for by the federal rules. A.C.R.R. R5–4–01, *et seq.* Moreover, our supreme court has previously indicated that the "individual intention" of board members will not control when determining an inmate's status. *Thomas* at 129, 564 P.2d at 80. Thus, the Board is not allowed to invoke unpublished rules and regulations. Rather, in *Thomas* the court looked solely to the Board's formally adopted rules and regulations.

Not only is *Christopher* inapplicable because of its regulatory framework, its facts also distinguish it from the instant case. Here, the state stresses and thereby concedes that there was "no new evidence to

be considered" when the Board rescinded its original decision. Certainly *Christopher* does not support the state's proposition that the Board, on its own motion, may deny a parole already granted if it concludes sua sponte that the initial decision was erroneous. *Christopher* does stand for the proposition that when given regulatory authority, the Board may, before an actual release, rescind a parole granted based on *new* and *relevant* evidence.

The state also argues that the Board does not require regulatory or statutory authority to reconsider a parole decision already made and announced. Rather, the state suggests that the Board's reconsideration is analogous to a "judicial tribunal when it revisits a case to revise, modify and correct an earlier judgment." Again, the state's authority is unpersuasive. The state relies on *Lindus v. Northern Ins. Co.*, 103 Ariz. 160, 438 P.2d 311 (1968). In *Lindus*, the Arizona Supreme Court stated that in cases of "fraud, imposition or mistake of fact, the court can always recall a mandate to modify and correct its own judgment." *Id.* at 162, 438 P.2d at 313. In the instant case, no "fraud, imposition or mistake of fact" existed when the Board originally granted Stewart's parole. Therefore, none can support its reconsideration. Certainly, one Board member's "discomfort" with his vote cannot, without regulatory or statutory authority, justify reconsideration. Both inmates and the Board must follow those duly adopted rules and regulations that apply to them.

Moreover, the *Lindus* opinion itself weakens the attempted analogy between a court and the Board of Pardons and Paroles. When determining what inherent authority a governmental organization possesses, our supreme court in *Lindus* reasoned that the functions of the organization played a critical role. The court justified recalling its own mandate by observing, "[i]t would be absurd to argue that a court, empowered to correct errors in every other court in this state cannot correct its own." *Lindus* at 162, 438 P.2d at 313. We therefore hold that the Board was without authority to rescind Stewart's parole.

## DUE PROCESS

In his petition for special action, Stewart maintained that the Board's arbitrary rescission of his parole denied him due process. The first question this court must address is whether an inmate has a constitutionally protected liberty interest in parole release before he is actually released to the community.

It is not the mere presence of the parole system that gives rise to a liberty interest in parole release. Rather it is the statutory language that may create a constitutionally protected "expectancy of parole." *Greenholtz v. Nebraska*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). It is possible for a statute that provides for parole release to create a liberty interest in such a release. *Board of Pardons v. Allen*, 482 U.S. ——, 107 S.Ct. 2415, 96 L.Ed. 2d 303 (1987). Although a statute may provide statutory criteria for release that are predictive and not factual, if the Board must order release once these conditions are satisfied, then the statute creates a presumption that a parole release will be granted when the statutory findings are made. The Supreme Court determined in *Greenholtz* and *Allen* that such a statute limits a parole board's previous unbridled discretion.

▪ A.R.S. § 31–412, as amended in 1978, is similar to those statutes reviewed in *Allen* and *Greenholtz*. The statute in *Allen* provides in pertinent part:

Prisoners eligible for parole. (1) Subject to the following restrictions, the board shall release on parole ... when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]

*Allen* at ——, 107 S.Ct. at 2420, 96 L.Ed.2d at 311. The Arizona statute provides in pertinent part that the Board "*shall* authorize the release ... if it appears to the board ... that the applicant will remain at liberty without violating the law." A.R.S. § 31–412(A) (emphasis added). Before amendment, this section had read: "[if] it appears to the board ... that there is rea-

sonable probability that the applicant will live and remain at liberty without violating the law, then the board *may* authorize release of the applicant upon parole." (Emphasis added.) The statute in *Allen* had been similarly amended. The Supreme Court determined that the amendment indicated legislative intent to significantly limit the previous grant to the Board of its once absolute discretion. *Allen* at ——, 107 S.Ct. at 2422, 96 L.Ed.2d at 314.

Because we conclude that A.R.S. § 31–412 creates a protected liberty interest in parole release, we must determine what due process rights should have been accorded Stewart and whether the Board observed them.

Certainly "due process" is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Arguably, the due process requirements for rescission of the parole are more than the minimum notice and hearing for an inmate awaiting a grant of parole, *see Broadhead*, 151 Ariz. 37, 725 P.2d 744, but less than the full panoply of *Morrissey* protections for revocation.

As previously noted, the federal parole system provides for rescission of a decision to grant parole. Some federal courts have held that due process would require a hearing similar to that required by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see Christopher v. United States Board of Parole*, 589 F.2d 924. In summary these are: (1) advance written notice of the charge; (2) a written statement by the factfinders of the evidence relied on and the reasons for their decision; (3) the right of the prisoner to present witnesses and documentary evidence if so doing would not be "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979–80, 41 L.Ed.2d at 956–57. In the instant case the Board failed to accord Stewart even a modicum of due process. However, because the Board has adopted no procedure for rescission of paroles the issue is not before us and we need not determine the minimum due process requirements for rescission of parole. The Board simply lacked authority to rescind Stewart's parole. *Thomas v. Arizona Board of Pardons and Paroles.*

We agree with Stewart and the state that the Board granted Stewart parole on November 5, 1986. We disagree with the state that the Board had authority to rescind that parole on December 1, 1986 given the procedures in place on that date. Therefore, the only authorized option open to the Board is revocation. In order to revoke Stewart's parole, the state must comply with the requirements of due process and grant Stewart a hearing pursuant to *Morrissey*. This has not been done nor is it contended that such a revocation took place.

It is ordered that the appellee, Robert Benjamin Stewart, be released from prison on parole status upon the issuance of our mandate. Thereafter, the board may proceed with a proper parole revocation hearing if it determines that this is appropriate under the circumstances as they now exist.

FROEB, P.J., and CONTRERAS, J., concur.