851 P.2d 88
**Douglas BORCHERS, Plaintiff–Appellant,**

v.

**ARIZONA BOARD OF PARDONS AND PAROLES, Defendant–Appellee.**

**No. 1 CA–CV 90–622.**

Court of Appeals of Arizona,
Division 1, Department D.

June 18, 1992.

Reconsideration Denied Aug. 17, 1992.

Review Denied May 18, 1993.

---

8. Majority at 460–61, 851 P.2d at 85–86.

9. Majority at 460, 851 P.2d at 85.

10. Majority at 460, 851 P.2d at 85.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Michael J. Cianci, Jr., Phoenix, for defendant-appellee.

Douglas Borchers, in pro. per.

## OPINION

TAYLOR, Presiding Judge.

### FACTS

Douglas Borchers ("appellant") was convicted of a felony in 1974 and sentenced to twenty years to life in prison. In November 1981, appellant became eligible for parole. After repeated requests, parole was authorized in 1987. On May 7, 1987, appellant signed and accepted the grant of parole. Because the Parole Board ("Board") did not give notice of the parole hearing to the victim as required by Ariz.Rev.Stat. Ann. ("A.R.S.") § 31–411(G), the Board vacated its order granting parole. Appellant was notified of the procedural defect and of the Board's decision to vacate the parole

grant. Subsequently, a parole hearing was held and members of the victim's family testified. Parole was denied, and appellant was informed by letter some thirty-one days later of the Board's decision. Appellant's challenge to the Board's action vacating the original order granting parole was determined adversely to him in other court proceedings.

On May 1, 1990, appellant filed a special action complaint in superior court, challenging the Board's action denying him parole at the subsequent hearing. Appellant's amended complaint asserted that the Board abused its discretion by (1) allowing members of the victim's family to participate in the parole hearing, (2) failing to list individualized reasons for parole denial, (3) failing to meet the statutory ten-day period required to notify appellant of parole denial, and (4) refusing appellant the opportunity to cross-examine witnesses at the parole hearing.

The court dismissed the amended complaint, finding it failed to set forth a cognizable claim. This timely appeal followed.

### DISCUSSION

#### Participation by Victim's Family

Appellant argues that the Board violated A.R.S. § 31–411(G) by allowing members of the victim's family to testify at appellant's parole hearing, contending that A.R.S. § 31–411(G) limits testimony to the following as listed in the statute: attorney general, presiding judge of the superior court, county attorney, victim, and the victim's family if the victim has died as a result of the crime. Thus, appellant argues, when the victim did not die as a result of the crime, the victim's family would be precluded from participating in the parole hearing. Appellant further interprets the statute to mean that while members of the victim's family cannot provide testimony at the hearing pursuant to A.R.S. § 31–411(G), they may provide testimony in the form of written reports. We believe appellant misinterprets the statute.

■ Our function is to construe statutory language according to its plain and unambiguous language and to follow the statute as written. *Consolidated Roofing & Supply Co. v. Grimm,* 140 Ariz. 452, 457, 682 P.2d 457, 462 (App.1984). Only when the plain meaning of a statute would lead to an absurd result is this court empowered to interpret the statute. *Holding v. Industrial Comm'n,* 139 Ariz. 548, 550, 679 P.2d 571, 573 (App.1984). When statutory language is unclear or ambiguous, this court must then look to the legislative purpose and intent behind the statute. *Richards v. Powercraft Homes,* 139 Ariz. 264, 267, 678 P.2d 449, 452 (1983), *vacated in part on other grounds,* 139 Ariz. 242, 678 P.2d 427 (1984).

■ At the time of the parole hearing, A.R.S. § 31–411(G) stated:

> The board, when a commutation or parole is to be considered, *shall, before holding a hearing on the commutation or parole, notify* the attorney general, the presiding judge of the superior court, the county attorney in the county in which the prisoner requesting a commutation or parole was sentenced, and the victim of the offense for which the prisoner is incarcerated or the family of the victim if the victim died as a result of the prisoner's conduct. *The notice* to the victim or victim's immediate family shall be mailed to the last known address. *The notice* shall state the name of the prisoner requesting the commutation or parole and shall set the date of hearing on the application. *The notice* to the victim or the victim's immediate family shall also inform them of their right to submit a written report to the board expressing their opinion concerning the release of the prisoner. No hearing concerning commutations or parole shall be held until fifteen days after the date of giving the *notice.*

(Emphasis added.) Applying the rules of statutory interpretation stated above, we interpret A.R.S. § 31–411(G) as a notice provision alerting interested parties to an upcoming parole hearing. This statute does not limit those from whom the parole board may obtain information to assist them, nor does it limit those who may seek to participate in the parole hearing or the nature of that participation. Furthermore, that portion of the notice provision alerting a victim or victim's family, when appropriate, to the right to submit a written report does not state that a victim or the victim's family can provide only a written statement of their views on the parole request. The entire thrust of § 31–411(G) is to provide sufficient notice to interested parties. We find appellant's interpretation inconsistent with the plain meaning of the statute.

*The Ten–Day Notice Requirement*

■ Appellant argues that the Board violated his due process rights when it failed to notify appellant, in writing, of the reasons for parole denial within ten days of the parole hearing as required by A.R.S. § 31–411(F). Appellant argues that because the statute uses the mandatory language "shall," the failure to notify appellant of the denial within the ten-day period is a *per se* violation of due process.

In pertinent part, A.R.S. § 31–411(F) states that "[w]hen a prisoner appears before the board and his parole is denied, *the board shall within ten days prepare and deliver to the prisoner* and director of the state department of corrections *a written statement specifying the individualized reasons for the denial of parole* or absolute discharge." (Emphasis added.) Here, appellant was not informed that his parole was denied until approximately thirty-one days after the hearing. The State concedes that A.R.S. § 31–411(F) was violated. The State argues, however, that because there was substantial compliance with the statute and no prejudice was shown, appellant's due process rights were not violated.

The State relies on two cases for its position, both of which address the due process rights of employees, *Smith v. Pima County Law Enforcement Council,* 113 Ariz. 154, 548 P.2d 1151 (1976); *Copper River Sch. Dist. v. State,* 702 P.2d 625 (Alaska 1985). Because there are no Arizona cases which address a prisoner's due process rights in receiving notice of denied

parole within the statutory period of denial, we look to other jurisdictions for guidance.

In *Vargas v. United States Parole Comm'n,* 865 F.2d 191, 194 (9th Cir.1988), the court held that while the Parole Commission's delay by forty days in conducting a parole revocation hearing violated its own regulation, this violation was not unreasonable absent a showing of prejudice. Similarly, in *Camacho v. White,* 918 F.2d 74, 79 (9th Cir.1990), the court held that when there is delayed notice of a revocation hearing, the parolee must show that the delay was unreasonable and that the parolee suffered prejudice by the delay in order to prevail.

Unlike *Vargas,* the rule violated here was not the Board's own regulation, but a statute. Even so, a tardy notice of the Board's decision is less likely to cause prejudice than a delayed notice of an upcoming hearing, as in *Camacho,* or a delay in holding the hearing, as in *Vargas.* Our supreme court has ruled that a violation of mandatory language, when no sanction is provided, requires a showing of prejudice before imposing sanctions or remedial action. *State v. Vassar,* 111 Ariz. 487, 489, 533 P.2d 544, 546 (1975) (holding that while Rule 14.1 of the Arizona Rules of Criminal Procedure mandates arraignment no later than ten days following indictment, the rule does not provide for sanctions; hence, prejudice must be shown). As with Rule 14.1, Arizona Rules of Criminal Procedure, A.R.S. § 31–411(F) contains mandatory language but makes no provision for sanctions. Although appellant may have been disconcerted by not being informed of the Board's decision for an additional three-week period, this irritation did not rise to the level of prejudice. Applying the logic of *Vassar* and *Vargas,* the critical factors are that a delayed notice must be accompanied by a showing of unreasonableness and actual prejudice in order to prove a due process violation. Because appellant failed to demonstrate prejudice and unreasonable conduct by the Board, appellant's claim of a due process violation must fail.

*Sufficiency of Reasons Given for Parole Denial*

■ Appellant argues that the Board failed to provide adequate reasons for parole denial in violation of A.R.S. § 31–412. The State responds that the reasons given were sufficiently specific and individualized, that the Board has sole discretion to decide whether to grant parole, and that a prisoner has no constitutional right to be given the reasons for denial, citing *Foggy v. Eyman,* 110 Ariz. 185, 516 P.2d 321 (1973). While the latter argument is correct, it is modified by legislative mandate. As quoted earlier, A.R.S. § 31–411(F) provides that when an applicant's request for parole is denied, the Board shall provide the prisoner "a written statement specifying the specific individualized reasons for the denial of parole. . . ."

Bearing upon our resolution of this issue is A.R.S. § 31–412(A), which states in pertinent part:

> If a prisoner is certified as eligible for parole pursuant to the provisions of § 41–1604.06 the board of pardons and paroles shall authorize the release of the applicant upon parole if the applicant has reached his earliest parole eligibility date pursuant to § 41–1604.06, subsection D, and *it appears to the board, in its sole discretion, that there is a substantial probability that the applicant will remain at liberty without violating the law.*

(Emphasis added.) This court has held that section 31–412(A) creates a constitutionally-protected liberty interest in parole release. *Stewart v. Arizona Bd. of Pardons and Paroles,* 156 Ariz. 538, 543, 753 P.2d 1194, 1199 (App.1988).

■ The critical determination the Board must make under A.R.S. § 31–412(A) is whether "there is a substantial probability that the applicant will remain at liberty without violating the law." By giving the Board "sole discretion" in making this determination, the legislature has set forth such a broad panoply of criteria "that it hardly curtails the Board's discretion at all." *Cooper v. Arizona Bd. of Pardons and Paroles,* 149 Ariz. 182, 185, 717 P.2d

861, 864 (1986). These criteria include such considerations as the gravity of the offense, including age of the victim, weapon used, and the good of society. *Id.* While appellate courts have jurisdiction to review the Board's actions to ensure it complies with the requirements of due process, the courts are not to act as a "super-parole board" or to dictate that the Board should act in any "particular manner." *Id.* at 184, 717 P.2d at 863. Should the Board deny a prisoner's application for parole, the Board is required by statute and its own regulation to specify to the inmate the reasons for denial. Ariz.Admin.Code R5–4–202(C)(2) (1980) (repealed May 31, 1991).

Here, appellant was given written notice which stated that parole was denied because of his past criminal history and the serious nature of the offense. Appellant classifies these as "generic reasons" and claims that such reasons are specified in the vast majority of denials. Assuming that to be true, appellant has not shown how those reasons do not apply specifically and individually to him. The fact that the Board approved parole and then subsequently denied it after hearing from the victim's family suggests that the Board found "the serious nature of the offense" to be a specific individualized reason to deny parole.

It is true, as the dissent points out, that the Board did not, in the reasons given for denial, articulate specifically the probability of appellant remaining at liberty without violating the law. Such may be the better practice, but we do not read *Cooper* as requiring such focused elaboration. If we follow the majority in *Cooper*, we would hold that the sole discretion given the Board "has foreclosed us from reviewing these reasons", and our inquiry would end. *Cooper*, 149 Ariz. at 186, 717 P.2d at 865. If, however, we conclude, as did the concurring opinion in *Cooper*, that the courts are not to be denied the right to review the action of the Board for statutory compliance, the result would be the same. The reasons given in this case are almost identical to those given for denial to some inmates in *Cooper*. We conclude, as did the concurring justices in *Cooper*, that factors

of past criminal history and seriousness of the offense bear upon the probability of a parole applicant successfully completing parole. Although we deem it a close question, we find that, under the facts of this case, the reasons given by the Board minimally comply with the statutory requirements.

*Right to Cross–Examine Witnesses*

■ Appellant asserts that his due process rights were violated when the Board denied him the opportunity to cross-examine witnesses at his parole hearing. Appellant contends that there could not be a fair parole hearing without determining the veracity and credibility of witnesses and that his cross-examination of witnesses was crucial to that determination.

Whether an applicant has the right to cross-examine witnesses at a parole hearing is an issue of first impression in this state. While we are not bound by the law as announced in other jurisdictions, we may look to those jurisdictions for guidance on this issue.

We commence our inquiry with an examination of the status distinction between one seeking parole and one threatened with parole revocation. It is readily apparent that the parole applicant has been sentenced to prison and seeks now to persuade the parole board that he has reached such a level of rehabilitation that he can be safely returned to society. The issue in the parole hearing is a judgment decision distilled from the information assimilated by the parole board. The parolee now threatened with revocation, on the other hand, has been previously found sufficiently rehabilitated and released into society. The issue in the revocation proceeding is a factual determination whether the terms of parole have been violated.

■ In *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972), the Supreme Court held that parolees are entitled to due process before their parole is revoked. The court in *Morrissey* reasoned "that the liberty of a parolee, although indeterminate, includes

many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.... Its termination calls for some orderly process, however informal." *Id.* at 482, 92 S.Ct. at 2600–01. This due process right, within the context of a parole revocation hearing, grants the parolee the right to confront witnesses, absent a showing of good cause to deny the confrontation. *Id.* at 489, 92 S.Ct. at 2604; *White v. White*, 925 F.2d 287, 291 (9th Cir.1991). Thus, the revocation hearing is an adversarial proceeding incorporating commensurate due process safeguards.

In *Inmates of the Nebraska Penal and Correctional Complex v. Greenholtz*, 576 F.2d 1274, 1278 (8th Cir.1978), *rev'd on other grounds*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the court held that "the nature of the interest at stake in both parole release and parole revocation is the same—conditional liberty versus incarceration—and thus" is protected by the Fourteenth Amendment. The court reasoned that because parole release is protected by due process, the relevant inquiry is "how much process is due." *Id.* at 1281. The court concluded that the full array of due process rights afforded a defendant in a criminal proceeding need not apply to an applicant for parole release since a parole release hearing is not a part of a criminal proceeding. *Id.* at 1282. Therefore, while a parole applicant must be allowed to personally appear before the board to explain his case, he does not have a constitutional right to confront witnesses. *Id.* at 1284; *see Wolff v. McDonnell*, 418 U.S. 539, 567, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974).

▆▆ We find the reasoning in *Greenholtz* sound. Unlike a parole revocation hearing, a parole release hearing, while often presenting conflicting opinions, is not a true adversarial proceeding. Its purpose is to assist the Board in gathering information to determine if the applicant can return to society without reoffending. Accordingly, we agree with the court's reasoning in *Greenholtz* that the full panoply of due process rights accorded a criminal defendant does not apply to a parole appli-

cant. As stated in *Greenholtz*, "[t]he task facing this court is to ascertain the minimal requirements of fundamental fairness by balancing the interests of the inmates in their statutorily granted expectation of meaningful consideration for parole and the interests of the state and society in the orderly administration of the parole system." *Id.* at 1282.

▆▆ Due process is flexible and calls for those procedural protections as demanded by any one particular situation. *Morrissey*, 408 U.S. at 481, 92 S.Ct. at 2600; *Stewart v. Arizona Bd. of Pardons and Parole*, 156 Ariz. at 543, 753 P.2d at 1199. We believe the Board's present procedure of allowing the introduction of evidence by a parole applicant as well as other interested parties meets the minimal due process requirements of fundamental fairness demanded by the purpose of the hearing. We find no due process requirement that those testifying before the Board be subject to cross-examination. When there is a need, the Board may question witnesses in order to better gauge the evidence presented. We deem this procedure sufficient to provide the Board an adequate means of determining the truthfulness of the information presented to it. This procedure is compatible with the purpose of a parole hearing, which is to permit the Board to gather information upon which to base its judgment on the suitability of the applicant to be released back into society. It is not an adversarial hearing to determine facts, but rather a forum for the gathering of information upon which to make a difficult judgment call.

This procedure also serves both state and societal interests in the orderly administration of the parole system. The Board is able to focus on that testimony which will assist it in making a fair and intelligent decision. At the same time, the victim and victim's family are spared the pain of cross-examination by one who has inflicted pain in the past. The case before us presents the classic example. The victim, then thirteen years of age, was kidnapped and raped at knifepoint by appellant. Threats were made that she and her family would

be killed if she reported her ordeal. Absent some compelling due process requirement, the victim and her family are entitled to such consideration as the criminal justice system may reasonably extend.

For the foregoing reasons, the decision of the trial court is affirmed.

EHRLICH, J., concurs.

GERBER, Judge, concurring and dissenting in part.

While I concur in the other results reached by the majority, I write separately because, in my view, the Board of Pardons and Paroles here fails to provide the precise reasons for parole denial required by Arizona law. A.R.S. § 31–412(A) requires the board to determine if the parole candidate will "remain at liberty without violating the law." The statute thus entails some prognosis of an inmate's potential for future lawful behavior. The companion statute, A.R.S. § 31–411(F), requires "individualized" reasons for parole denial. The two reasons given by the board for parole denial in this and every other case in my experience in the past several years, namely "seriousness of the offense and age of the victim," are generic and fixed in the past. These reasons are neither individualized nor responsive to the statutory query about future lawful behavior.

The federal courts remind us that these statutory requirements cannot be taken lightly. In *Parker v. Corrothers*, 750 F.2d 653 (8th Cir.1984), the court found that a parole denial requires more than "boilerplate" generalities. *Id.* at 662. A parole board's use of "boilerplate" reasons in denials is "tantamount to no reason at all" without consideration of an inmate's individual situation. *United States ex rel. Scott v. Ill. Parole and Pardon Bd.*, 669 F.2d 1185, 1191 (7th Cir.1982). State courts, other than ours, are making similar holdings. *Gilmore v. Kan. Parole Bd.*, 243 Kan. 173, 176, 756 P.2d 410, 413 (1988).

The parole board's practice of re-stating the reasons upheld in *Cooper, supra,* is understandable but inadequate. Nothing in *Cooper* suggests that the reasons upheld in that case would fit *all* parole denials.

Indeed, these rationalizations could not possibly apply to all parole denials since they must satisfy the statute's requirement for "individualized" reasons. Put simply, repeating in other cases the reasons for parole denial upheld uniquely in *Cooper* violates the statutory requirement for reasons tailored to each parole candidate.

In this respect alone, I would remand to the parole board with instructions to comply with A.R.S. § 31–411 and –412.