NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOHN K. INGERSOLL,
*Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF EXECUTIVE CLEMENCY, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 19-0069
FILED 11-21-2019

Appeal from the Superior Court in Maricopa County
No.  LC2018-000181-001
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

John K. Ingersoll, Tucson
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kelly Gillilan-Gibson
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

**¶1** John K. Ingersoll appeals the superior court's order accepting jurisdiction but denying relief and dismissing his petition for special action relief and a restraining order against the Arizona Board of Executive Clemency (the Board) and its Chair Dr. C.T. Wright. Because Ingersoll has shown no error, the court's order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2** In 1991, a jury found Ingersoll guilty of first-degree murder committed on October 10, 1990. The superior court sentenced him to life with the possibility of parole after 25 years. Ingersoll became parole eligible in 2015. Ingersoll had four hearings before the Board, which denied him parole, home arrest or absolute discharge each time.[1]

**¶3** In February 2018, Ingersoll filed a special action petition in superior court, seeking to enjoin Wright from participating in his future Board hearings. Ingersoll alleged Wright had misstated facts during Board hearings, which influenced other Board members and prevented Ingersoll from having a fair hearing. At Ingersoll's request, the court ordered the Board to prepare a transcript of Ingersoll's November 9, 2017 Board hearing, which the Board then provided to Ingersoll and the court.

**¶4** After full briefing, the court accepted jurisdiction of Ingersoll's petition, but denied relief (finding no evidence to support his claims) and dismissed the petition with prejudice. This appeal of that order followed.

---

[1] After the superior court entered its order denying relief in this matter, Ingersoll had a fifth hearing, which is not at issue here.

## JURISDICTION

**¶5**        The Board challenges the timeliness of Ingersoll's appeal. A notice of appeal must be filed with the superior court within 30 days of the entry of a final judgment. *See* Ariz. R. Civ. App. P. 8(a), 9(a) (2019).[2] It is undisputed that Ingersoll's notice of appeal was filed within 30 days of the superior court's decision, but that the notice was filed with this court. The issue is whether Ingersoll's timely filing of a notice of appeal with this court (not the superior court) properly invokes this court's appellate jurisdiction.

**¶6**        By statute, no appeal "shall be dismissed for the reason only that it was not brought in the proper court or division, but it shall be transferred to the proper court or division." A.R.S. § 12-120.22. By rule, however, "[i]f a party timely submits a document for filing in an incorrect appellate court or appellate division, the appellate clerk must deliver that document to the appropriate appellate court or appellate division, and the recipient appellate court will consider the filing timely." Ariz. R. Civ. App. P. 4(d). Rule 4's most recent amendment added "appellate" before "court and division," which the Board argues narrowed the exception for misfiled documents.[3] This narrowing, the Board adds, indicates this court may lack appellate jurisdiction over Ingersoll's notice of appeal erroneously filed with this court.

**¶7**        This court's appellate jurisdiction is established by statute, and a rule cannot narrow the scope of A.R.S. § 12-120.22(B). *See Campbell v. Arnold*, 121 Ariz. 370, 371 (1979). Accordingly, Ingersoll's notice of appeal, although filed with the wrong court, properly invoked this court's jurisdiction, meaning this court has jurisdiction over his appeal. *See* A.R.S. § 12-2101(A)(1); *Adams v. Valley Nat. Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing "courts prefer to decide each case upon its merits rather than to dismiss summarily on procedural grounds").

---

[2] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

[3] *See* Ariz. R. Civ. P. Application Provisions of Order No. R-14-0017, available at https://www.azcourts.gov/Portals/20/2014%20August%20Rules/R140017.pdf.

**DISCUSSION**

**¶8**        Ingersoll argues (1) he should have received transcripts of all Board hearings; (2) the Board failed to provide him a proper parole hearing "as defined by applicable procedure, policy, rule, and most fundamental, law" and deprived him of due process; and (3) the Board's denial of his requested relief was arbitrary, capricious and an abuse of discretion and based on inadequate evidence.

**¶9**        The superior court entered a June 2018 minute entry "authorizing that a transcript of the hearing before the" Board "shall be prepared." A request for procedural order, filed by Ingersoll in early July 2018, asked that the Board "complete transcripts" and, after completion, that the court set new dates for a response and reply. The Board filed a motion, asking that either the court pay for the transcripts or the order requiring any transcripts be prepared be vacated. The court then clarified that the order was to have the Board "prepare the transcripts of relevant hearings" at the Board's expense, and "direct[ed] the Board to comply with such Order."

**¶10**        A later filing by Ingersoll expressed "grave doubts as to the veracity of the forthcoming transcripts ordered by the court." Ingersoll then sought sanctions because the Board had not yet provided any transcripts. After the court noted it was taking no action on that sanctions request, the Board filed a transcript of the November 9, 2017 Board hearing. The court then issued an order denying Ingersoll's requested relief at about the same time he made another filing about the Board providing transcripts.

**¶11**        On appeal, Ingersoll appears to argue that the Board failed to provide transcripts from all four hearings mentioned in his petition. Yet Ingersoll fails to acknowledge that he had access to the audio recordings of all four hearings. The superior court's orders can be read as requiring transcripts for all four hearings. To the extent that the reference to "relevant hearings" was to all Board hearings that had occurred by the time Ingersoll filed his petition, the only transcript he received was from the November 9, 2017 hearing. Ingersoll, however, has not shown how the court would have jurisdiction to consider challenges to the three previous Board hearings. Moreover, Ingersoll filed his reply in further support of his petition in late July 2018, long before he received the transcript in October 2018. He did so without objection and without seeking additional time to account for additional transcripts. A review of the November 9, 2017 transcript does not support Ingersoll's claims, and on this record, he has shown no reversible error regarding the production of transcripts.

¶12        The substantive challenges Ingersoll presses ask, in essence, for this court to review the merits of the Board's decisions. This court's review, however, is more limited. The Board has the authority to authorize the release of a prisoner certified as eligible for parole if "it appears to the [B]oard, *in [the Board's] sole discretion*, that there is a substantial probability that the applicant will remain at liberty without violating the law and that the release is in the best interests of the state." A.R.S. § 31–412(A) (emphasis added). Although judicial review of Board decisions is available "to insure that the requirements of due process have been met and that the [Board] has acted within the scope of its powers," courts are otherwise "precluded from reviewing" Board decisions. *Stinson v. Arizona Bd. of Pardons & Paroles*, 151 Ariz. 60, 61 (1986) (quoting *Cooper v. Ariz. Bd. of Pardons & Paroles*, 149 Ariz. 182, 184–86 (1986)). Neither the superior court nor this court serves as a "superparole board." *Cooper*, 149 Ariz. at 184.

¶13        As applied, Ingersoll claims the Board failed to provide him a proper parole hearing "as defined by applicable procedure, policy, rule, and most fundamental, law" and deprived him of due process. In his opening brief, Ingersoll cites to the Rule Book of the Board of Pardons and Paroles, various provisions of the Arizona Administrative Code (A.A.C.) and two A.R.S. sections to establish the applicable procedure, policy, and laws. Although Ingersoll's brief on appeal takes issue with the superior court's analysis, the issue here is whether the Board violated his due process rights or exceeded its powers. *Id.*

¶14        Ingersoll has failed to demonstrate that the Board exceeded its powers. Though Ingersoll cites to the Rule Book and regulations, he does not rely on the current version of the applicable Rules. Ingersoll cites A.A.C. R5-4-101 ("Purpose of Rules"), -103 ("Agency Purpose"), -105 ("Availability of Records"), -108 ("Release of Information") and -109 ("Hearings of Meetings"), all of which were repealed effective May 31, 1991 and have no application here. *See*, *e.g.*, A.A.C. R5-4-101 ("General Provisions"). Ingersoll also cites A.R.S. §§ 31-411 and -412. In doing so, he does not show how the Board violated Section 31-411 and, although disputing the Board's decision, he does not show how it exceeded its powers in applying Section 31-412.

¶15        Ingersoll takes issue with the presence of only two Board members at his August 2017 hearing. He argues the presence of only two members violated A.R.S. § 31-401(G), but again Ingersoll has cited to an out of date version of the statute. Under the current version of the statute, "three members of the board constitutes a quorum, *except* that the chairman may designate that the presence of two members of the board constitutes a quorum." A.R.S. § 31-401(I) (2019) (emphasis added). Because the record

does not suggest that the chair failed to designate two members as a quorum for the August 2017 hearing, the court presumes the record supports the Board's actions. *See Cullison v. City of Peoria*, 120 Ariz. 165, 168 n.2 (1978) (citation omitted).

**¶16** Turning to Ingersoll's remaining arguments, he claims the reasons the Board provided for the denial are arbitrary, capricious and an abuse of discretion. The Board has "sole discretion" to determine if an inmate is suitable for parole, house arrest or absolute discharge. *See* A.R.S. § 31-412(A); *Cooper*, 149 Ariz. at 185 (emphasizing the "legislature has given the Board 'sole discretion' in determining whether an applicant is suitable for parole"). "The criterion set forth by the legislature for making such a determination is so broad that it hardly curtails the Board's discretion at all." *Cooper*, 149 Ariz. at 185.

**¶17** Ingersoll explicitly disputes the Board's reliance on his criminal history, loss of human life and a serious and violent offense. Ingersoll classified the last two reasons as "facts of every homicide, legal or illegal." However, he does not dispute the application of these reasons to his case. *Cf. Borchers v. Ariz. Bd. of Pardons and Paroles*, 174 Ariz. 463, 468 (App. 1992) (noting even generic reasons for denial of parole "minimally compl[ies] with the statutory requirements").

**¶18** Moreover, an inmate's prior criminal history is a relevant Board consideration. *See id.* Ingersoll may claim the Board manufactured his criminal history, but a review of the record (including his presentence report) indicates otherwise. Starting in 1965, Ingersoll's criminal history began with misdemeanors, then moved to a felony conviction resulting in probation, then to a violation of felony probation when "defendant absconded" and, ultimately, to the murder and kidnapping. Although disagreeing with this history, and the reasons for the Board's denial, such disagreement does not constitute grounds for vacating the Board's actions. *See Cooper*, 149 Ariz. at 186.

**¶19** Ingersoll argues the Board and superior court "apparently believe that by simply allowing applicants to appear before the clemency board that the legal requirements of a parole hearing have been met." "Due process . . . requires notice and opportunity to be heard . . . ." *McGee v. Ariz. State Bd. of Pardons and Parole*, 92 Ariz. 317, 320 (1962); *see* A.R.S. § 31-411(B) (2019) ("A prisoner who is eligible for parole . . . shall be given an opportunity to be heard . . . ."). The November 2017 hearing transcript indicates Ingersoll was not denied due process. In this, his fourth hearing, the Board gave Ingersoll the opportunity to explain not only the offense and

what had changed since he committed the murder and appeared before the Board, but also any other information Ingersoll felt the Board should be aware of before voting. Nothing in the record shows Ingersoll was denied notice and an opportunity to be heard, or that the Board exceeded its powers.

¶20 Finally, Ingersoll argues Wright deliberately misstated facts to prevent other Board members from granting him parole. During the third hearing (January 2017), Wright provided the factual summary of Ingersoll's case incorrectly by stating that: (1) Ingersoll had taken the victim's wallet and keys and (2) the victim was married. These two statements are the basis for Ingersoll's claim against Wright.[4]

¶21 However, Ingersoll fails to acknowledge that during the hearing, he was allowed to correct Wright's summary but did not do so. Furthermore, following the hearing, Ingersoll sent the Board a three-page letter correcting the record, which was read and acknowledged during his fourth hearing in November 2017. Ingersoll's claim that Wright's misstatements during the third hearing have continued to improperly influence later hearings are not supported by the record. A review of the November 2017 transcript demonstrates that Wright did not make any statements during the hearing, did not make any statements during the Board's deliberation and merely seconded another Board member's motion to deny parole. The record does not support Ingersoll's claim that Wright is attempting to improperly influence other Board members to deny him parole.

---

[4] Ingersoll suggests that Wright and former Board members have engaged in a pattern of inventing facts, and former members were forced to resign as a result. In making this suggestion, Ingersoll relies on a Maricopa County Superior Court case, *Allen v. Lines, et al.*, No. CV2017-000702 (2017). That case, however, was voluntarily dismissed, and was not adjudicated on the merits. *Allen*, therefore, cannot support Ingersoll's claim.

## CONCLUSION

**¶22**    The superior court's order denying relief and dismissing is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA